**FRIEDMAN'S EXPRESS, Inc., et al. v.**
**MIRROR TRANSP. CO., Inc.**
**Civ. A. No. 10136.**

District Court, D. New Jersey.
June 12, 1947.

Edmond J. Dwyer, of Newark, N. J., and Charles E. Cotterill, of New York City, for plaintiffs.

August W. Heckman, of Jersey City, N. J., and McCauley & Henry and John B. Siefken, all of New York City, for defendant.

MEANEY, District Judge.

Application has been made to this Court for a temporary injunction, restraining the defendant company from transporting certain commodities known as "Comic Supplements". Nothing would be involved upon a final hearing that may not now be determined, and the whole matter may be disposed of by a finding as to the simple question at issue in the present application.

Reduced to its simplest form, the court is called upon to determine whether or not the commodity being transported, is at the time of such transportation, a newspaper within the meaning of Congress in 49 U.S.C.A. § 303(b)(7).

Indubitably the original concept of what constituted a newspaper was confined to a publication containing a recital of current events, with comments and opinions on them and other matters of public import. Whether the term has such a limited application at the present time is another matter.

■ The present-day newspaper, in addition to carrying "items of general news interest", contains enormous quantities of advertising, political comment, chess problems, cross word puzzles, what are called (and very often with lamentable inaccuracy) comics, and special features of unending variety. The sum total is known as a newspaper, and generally regarded as such. The proportion of news items to advertisements and special features varies with different papers; and in the Sunday issues of Metropolitan journals which are imposing in bulk, if not always in contents, the proportion of news to the rest of the printed and pictured matter is but small. News of world-shattering import will be conveyed to readers in far less space than is occupied in calling attention to contraptions for shapely confinement of the female figure, or for perfumes guaranteed to slay the most recalcitrant misogynist, or for conveying the reminder that even your best friends won't tell you. Reports of discussions at the United Nations Organization or Ecclesiastical synods yield in amount of line-space to paid recital of the ultimate in boudoir furnishings or kitchen equipment. The greater part of the matter furnished for the edification of the Sunday newspaper reader is concerned with salesmanship, fiction and mental titillators rather than the exposition of news. Enormous amounts of advertising are the main source of revenue of dailies, weeklies and month-

lies. Without this financial return, the general and extensive coverage of news, local, national and world-wide, would be impossible; and the more valuable functions of the newspaper would be severely handicapped and circumscribed.

All of this melange is contained in what are known as special sections of the paper. There is the advertising section, the home section, the magazine section, the financial section, the sports section and the news section, each with its appeal to various members of the family. The collection in its entirety is recognized as a Newspaper and is carried and distributed as such without distinction as to sections. Each section is thus an integral part of the newspaper, made so not because it is physically folded in a news section, but because it has assumed the character of the journal of which it is a part; and each bears at its masthead the name of the publication of which it is a part.

Since then, when included with the balance of the sections of the "newspaper", comic supplements are part of such newspaper, it seems a bit contradictory to say that it loses its character when it is not in company with the other sections though destined for no other purpose than union with such other component parts of the total bulk, which later may be known as the Sunday Mirror, or the Sunday Newark News, or the Sunday Herald Tribune. Just as a magazine meant for sale as an independent publication cannot acquire the status of a newspaper part simply by being folded with the news section of a newspaper, so e contrario, a comic supplement is not deprived of its character as part of a newspaper simply because it is not yet placed in physical contiguity with the rest of its fellow parts that go to make up the modern intelligencer. It has no character of its own, nor is it intended for sale separate from the balance of the newsprint with which it makes up the journal.

There does not seem to be much weight to the contention that the comic supplement is printed in a plant other than that in which the news items are set up. There is no warrantable limitation on a newspaper publisher as to where the parts of his paper may be composed and reduced to visual condition or who shall do it for him. Convenience, economy and other such conceivable considerations may influence the place of production of the whole newspaper or its parts, without affecting the character of the finished product.

Congress in its decision to exclude newspaper distribution from the operation of the statute was affected by easily recognizable zeal to ease the burden of newspaper publishers in the distribution of their product, and it is not unreasonable to recognize that the desires and convenience of the reading and scanning public prompted this concern for the producers of newspapers. And who shall say that the elders of the family, as well as juniors, are not enraptured by the adventures of The Yellow Kid, Mutt & Jeff, Superman, Lil Abner, Joe Palooka, Orphan Annie and the other miscellaneous improbabilities which appeal to the minds of our day, the law of supply and demand being what it is? Or that only the older members of a family are to be considered, in so far as their newspaper predilections are concerned?

References to these cartoon figures are contained in editorial comments, which it might be noted in passing, could possibly account for the seeming familiarity of the Court with such Antic personalities.

It is not for this court to express any opinion on the quality of the commodity in question or its educational value. Suffice it to say that the foregoing considerations lead to the conclusion that comic supplements, so called, for good or ill, are to be deemed to be within the term newspaper as comprehended in the act in question.

Since this finding is dispositive of the whole question, and is conceded to be so, by both parties to the controversy, let an order for final judgment be submitted for entry.