Charles RAGLAND, Commissioner of Revenues,
Department of Finance and Administration, State
of Arkansas *v.* K-MART CORPORATION

81-136                                    624 S.W. 2d 430

Supreme Court of Arkansas
Opinion delivered November 23, 1981

*James R. Eads, Jr., Joseph V. Svoboda, H. Thomas Clark, Jr., Timothy J. Leathers, Kelly J. Jennings, Wayne R. Zakrzewski,* by: *Cassandra Wilkins-Slater,* for appellant.

298

*C. Brantley Buck* of *Rose Law Firm, P.A.*, for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellee, K-Mart, is a retail discount chain operating seven stores in Arkansas. Appellant conducted a use and sales tax audit of K-Mart for the period of April 1, 1974, through December 31, 1977. This audit resulted in the assessment of a use tax deficiency of $17,280.13 and a sales tax deficiency of $55,475.89. Each sum includes interst and 10% penalty. K-Mart paid the assessed sums under protest and filed suit for refund under the procedure permitted by Ark. Stat. Ann. § 84-4721 (Repl. 1980).

This appeal is from a Pulaski County Chancery Court decree holding: (1) that preprint advertising supplements printed out of state and delivered to Arkansas newspapers for distribution are exempt from the Arkansas Use Tax, Ark. Stat. Ann. § 84-3105 (Repl. 1980) and, (2) that K-Mart is entitled to retain money collected as sales tax from consumers since the amount collected is in excess of the sales tax authorized by Ark. Stat. Ann. § 84-1903 (Repl. 1980). We will consider each issue separately.

I

USE TAX

K-Mart contracted with an out-of-state printer to produce preprint supplements advertising its merchandise and contracted with newspapers within the state to distribute the supplements along with the newspaper on specified days. Arkansas newspapers charge K-Mart a fee based upon the newspapers' general circulation. The record reflects that, generally, supplements to a particular newspaper carry the logo, name, of all newspapers in which it is scheduled to appear. This is known as a "gang logo." However, one Arkansas newspaper required, during the taxing period in question, that the supplements bear the date of insertion and its name only.

Appellee argues and the chancellor concluded that preprint advertising supplements are a component part of

the newspaper like many other pre-printed sections (*e.g.* comics) and are, therefore, exempt from the Arkansas sales and use tax. Specifically, Ark. Stat. Ann. § 84-1904 (f) (Repl. 1980) exempts from sales tax "gross receipts or gross proceeds derived from the sale of newspapers" and Ark. Stat. Ann. § 84-3106 (B) (Repl. 1980) specifically exempts from use tax any tangible personal property exempt from sales tax. However, in this case we do not reach the question of whether unassembled component parts of a newspaper are exempt as "newspapers" under § 84-1904 (f) since we decide that the supplements here in question are not a component part of a newspaper and therefore cannot possibly be exempt as "newspapers."

In deciding what a component part of a newspaper is, we must first define "newspaper." There is no statutory definition, but the term was defined in *Continental Life Ins. Co.* v. *Mahoney,* 185 Ark. 748, 49 S.W. 2d 371 (1932) in the context of statutes requiring legal notices to be published:

> [T]he definition of a newspaper, within the meaning of the statute, is to be taken in its popular sense, which is one to which the general public would resort in order to be informed of the news and intelligence of the day, and which is published at stated intervals and carries reports of those happenings of general importance and interest to the ordinary individuals.

"Newspaper" has also been defined as "a paper that is printed and distributed daily, weekly, or at some other regular and usually short interval and that contains news, articles of opinion (as editorials), features, advertising, or other matter regarded as of current interest. . . . " *Webster, Third New International Dictionary.*

In *Friedman's Express* v. *Mirror Transp. Co.,* 169 F. 2d 504 (3rd Cir. 1948), the court held that comics were an integral part of the newspaper for the purpose of an Interstate Commerce Commission exemption, and the court in *Sears Roebuck & Co.* v. *State Tax Comm'n,* 370 Mass. 127, 345 N.E. 2d 893 (1976) followed this reasoning in holding that preprint advertising supplements were within

the definition of "newspaper." However, we decline to follow the *Sears* case, relying instead on *Caldor, Inc.* v. *Heffernan, Tax Comm'r*, 183 Conn. ___ (42 Conn. L.J. No. 43, p. 6) (1981), in which the court concluded that advertising supplements were not within the sales tax exemption given to newspapers.

We have considered the following factors in determining that preprint advertising supplements are not a component part of a newspaper:

1. Ownership. K-Mart purchased the supplements and ownership continued until the newspaper was delivered. Although the supplements were mailed to the newspaper, control, as an incident of ownership, remained with K-Mart until the distribution process of the newspaper was beyond recall. The newspaper was merely paid a fee for distribution of the supplements.

2. Preparation. These supplements were prepared by an entity totally independent of the newspaper and are not necessarily printed on the same type of paper as other parts of the newspaper.

3. Regular feature. Advertising preprint supplements are not a regular feature of any newspaper. A supplement defines itself as such, as opposed to purporting to be a component part of the newspaper. Furthermore, advertising supplements do not necessarily appear in each edition of a particular newspaper. Their appearance in the paper and the extent of its distribution is dictated by K-Mart's advertising policy.

4. Privity of contract. The newspaper pays for the insertion of comic and similar supplements whereas K-Mart pays the newspaper to distribute the preprint advertising supplements.

5. "Supplement to" followed by "gang logo." Unlike other supplements of a newspaper that bear only the logo of the specific newspaper of which they are a part, advertising

preprint supplements bear the words "supplement to" followed by a "gang logo."

6. Distribution. The advertising supplements are sometimes distributed separate and apart from the newspaper. In this case they were offered as free handouts at K-Mart stores, and it is stipulated that these handouts were subject to use tax.

Any tax exemption provision must be strictly construed against the exemption, and to doubt is to deny the exemption; the taxpayer has the burden of clearly establishing the exemption beyond a reasonable doubt. *S.H. & J. Drilling Corp.* v. *Qualls,* 268 Ark. 71, 593 S.W. 2d 178 (1980); *Western Paper Co.* v. *Qualls,* 272 Ark. 466, 615 S.W. 2d 369 (1981). In this case K-Mart has not met this burden. Therefore, we conclude that advertising preprint supplements are not a component part of the newspapers in which they appear and are not exempt from use tax as newspapers under § 84-1904 (f). The judgment of the trial court on this issue is reversed.

II

SALES TAX

K-Mart collected as sales tax from consumers the amount in question which was in excess of the tax authorized by Ark. Stat. Ann. § 84-1903 (Repl. 1980). This statute levies a 3% sales tax on the gross proceeds derived from all sales to any person.

Appellant relies on *Cook* v. *Sears Roebuck & Co.,* 212 Ark. 308, 206 S.W. 2d 20 (1947). Sears collected sales tax in the amount provided by statute but refused to remit to the State any of the taxes so collected. This Court held that to allow Sears to retain money collected as a sales tax would be to completely disregard the doctrine against unjust enrichment. However, that case did not reach the issue of whether the system of collecting the tax was authorized by statute which is the issue we address in this case.

Ark. Stat. Ann. § 84-1908 (Repl. 1980) places on the

seller the responsibility for collecting this tax from the purchaser and authorizes appellant to set up by regulation a bracket system of collecting the tax due. Pursuant to this statute appellant promulgated Art. 9 of the Gross Receipts Tax Regulations:

> The tax in all instances is to be collected by the retailer, except as to the sale of new and used motor vehicles, etc. (See automobiles).

> The amount of tax to be collected on each sale is 3% of the gross proceeds thereof, but for the convenience of the seller in collecting the tax, the following brackets are to be followed:

> 1 cent to 14 cents inclusive — no tax
> 15 cents to 44 cents inclusive — 1 cent
> 45 cents to 74 cents inclusive — 2 cents
> 75 cents to $1.14 inclusive — 3 cents
> Scales accordingly.

> Use of the above bracket system does not relieve the seller from the duty and liability to remit an amount equal to 3% of the gross receipts derived from all sales during the taxable period.

Collection of this tax in accordance with the above regulation resulted in the overcollection of the sum at issue. The trial court found that the consumers who paid the tax cannot be identified and a refund of the overcollection is not possible.

Ark. Stat. Ann. § 84-1906 (Repl. 1980) provides for the computation and remittitur of the tax to the State:

> The tax shall be computed by multiplying the tax rate times the amount of the total combined gross receipts or gross proceeds derived from all taxable sales during the preceding month, without regard to the amount that may be allocated to gross receipts tax on the taxpayer's books of account. Such taxpayer shall compute and remit to the Commissioner the required tax

due for the preceding calendar month, the remittance or remittances of the tax to accompany the returns herein required. . . .

Ark. Stat. Ann. § 84-1907 (Repl. 1980) requires the keeping of adequate records to substantiate and prove the accuracy of such returns:

It shall be the duty of every taxpayer required to make a return and pay any tax under this act [§§ 84-1901 — 84-1904, 84-1906 — 84-1919] to keep and preserve suitable records of the gross receipts or gross proceeds of sales taxable and nontaxable under this act, including such books of account and such analyses of sales as may be necessary to determine the amount of the tax due hereunder and all invoices, credit memoranda, refund slips, and other records of goods, wares, merchandise, and other subjects of taxation under this act as will substantiate and prove the accuracy of such returns. . . .

The tax levied is 3% of the gross proceeds and it is clear from reading these statutes that the tax payable is to be computed by multiplying the tax levied times the combined gross proceeds derived from all taxable sales during the preceding month. This amount is required to be remitted to the State monthly and records are to be duly kept to prove the accuracy of such remittitur. Appellee has followed the statutes explicitly in computing and remitting the tax on its sales. The judgment of the trial court on this issue is affirmed.