421 So.2d 1251 (1982)
Ralph P. EAGERTON, Jr., as Commissioner of Revenue of the State of Alabama
v.
DIXIE COLOR PRINTING CORPORATION and Greater Buffalo Press, Inc., a corporation.
81-318.
Supreme Court of Alabama.
September 17, 1982.
As Corrected on Denial of Rehearing November 5, 1982.
Charles A. Graddick, Atty. Gen., and Herbert I. Burson, Jr., Chief Counsel Dept. of Revenue, and Asst. Atty. Gen., and John J. Breckenridge, Asst. Counsel Dept. of Revenue, and Asst. Atty. Gen., for appellant.
Walter R. Byars and Wanda D. Devereaux of Steiner, Crum & Baker, Montgomery, for appellees.
SHORES, Justice.
Defendant Ralph P. Eagerton, as state commissioner of revenue, appeals an order of the trial court granting a refund of state and local sales taxes paid by plaintiffs Dixie Color Printing Corporation (Dixie Color) and Greater Buffalo Press, Inc. (Buffalo Press) on the sale of newspaper advertising supplements. We affirm.
Dixie Color, a subsidiary of Buffalo Press, is an independent commercial printer, located in Sylacauga, Alabama. From 1974 to 1976, Dixie Color had an agreement with Moore-Handley, Inc., whereby Dixie Color printed newspaper advertising supplements *1252 for Moore-Handley for insertion into various newspapers for distribution with the newspapers. Most of the supplements were printed with the masthead of the newspaper in which they were inserted. All were printed according to specifications supplied by the newspapers. Moore-Handley paid Dixie Color a total of $243,250.08 for the supplements printed during this time. Dixie Color collected no sales taxes from Moore-Handley, contending that the sales of these supplements were exempt from taxation because they were to be inserted and become part of a newspaper and, thus, were for resale. The sale of the newspaper to the public is a retail sale and is, therefore, subject to state and local taxes. Ala.Code 1975, § 40-23-2(1).
In 1977, the Alabama Department of Revenue conducted an audit of the business records of Dixie Color and Buffalo Press. The commissioner determined, based upon § 40-23-26, Ala.Code 1975, that the plaintiffs owed $10,922.48 in state sales tax and $2,730.21 in city sales tax[1] from the sales of newspaper advertising supplements to Moore-Handley. In March, 1978, the plaintiffs made payment in full of all taxes claimed due by the commissioner.
On July 20, 1979, Dixie Color and Buffalo Press filed suit against the commissioner and Moore-Handley, seeking a refund of sales tax payments, or, in the alternative, to recover from the buyer taxes paid. Moore-Handley was later dismissed as a defendant. Plaintiffs also directly petitioned the commissioner in February, 1980, for a refund of taxes paid; the petition was denied.
The trial court, upon a stipulation of facts, found that Revenue Rule P18-031, upon which the commissioner relied in denying a refund, and the department's enforcement thereof resulted in an unconstitutional application of § 40-23-2, Ala.Code 1975, and other relevant Alabama revenue laws. The trial court ordered the commissioner to refund $10,862.16 in state taxes and $2,715.13 in local taxes, plus interest, to the plaintiffs.[2] The commissioner appealed after the trial court refused to vacate the judgment.
The primary issue presented in this appeal is whether Rule P18-031, Printers, creates an arbitrary and discriminatory classification, the enforcement of which creates an unconstitutional application of relevant state revenue laws. Rule P18-031 was promulgated by the Department of Revenue to offer taxpayers and tax administrators an interpretation of the tax laws on sales made by printers. That rule states, in pertinent part, that:
"Sales to consumers of printed matter such as catalogs, books, letterheads, invoice forms, envelopes, folders, advertising circulars, and the like by printers or others engaged in selling printed matter are subject to sales tax....
"Newspaper advertising supplements or circulars inserted in newspapers usually fall in the following categories:
"(1) A buyer enters into a contract with a printer for the printing of advertising circulars, catalogs, etc., and directs the printer to deliver the printed material to a newspaper or several newspapers, or directs that they be delivered to another location, sometimes the buyer's place of business. The buyer then enters into a second contract with the newspaper for distribution of the inserts. The printer has made a retail sale to his customer and the sale is subject to the sales tax.
"(2) Newspaper advertising supplements and inserts which are inserted into newspapers and sold as part and parcel of the newspaper, the retail sales of which are subject to the sales tax, *1253 no sales tax arises where such advertising supplements or inserts are (1) printed by the publishers of the newspaper and inserted into and sold as part and parcel of the newspaper published by such publishers or (2) printed by another printer for the newspaper publisher and paid for by the newspaper publisher for insertion into and sold as part and parcel of the newspaper."
Department of Revenue Sales and Use Tax Rule P18-031, Printers.
Rule P18-031 divides the sale of newspaper advertising supplements into three categories. Supplements printed by printers and sold to advertisers are taxed; inserts printed by printers and sold to newspapers are exempt, as are inserts printed by the newspaper. The commissioner argues, in support of the rule, that he is within his regulatory authority to treat newspapers differently from printers, on the grounds that they serve different functions. We do not question the commissioner's authority to classify different groups; however, "classifications for the purpose of taxation must not be arbitrary, but must be based on a real and substantial difference and there must be no discrimination in favor of one against the other." Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927 (1928).
The commissioner argues under the facts in this case that the sales of supplements by Dixie Color were retail sales and, therefore, properly subject to sales tax. Ala.Code 1975, § 40-23-2(1). The Code defines "retail sale" to include "all sales of tangible personal property except those ... defined as wholesale sales." § 40-23-1(a)(10). Section 40-23-1(a)(9)(a), in turn, defines "wholesale sale," inter alia, as a "sale of tangible personal property ... for resale." The commissioner contends that the supplements were never resold by Moore-Handley, but simply distributed to the public by the newspapers, and that Moore-Handley was the ultimate consumer of the supplements. We do not agree. The individual who purchases a newspaper that contains the supplement, along with all other sections of the newspaper, is the ultimate consumer and pays a retail sales tax on that purchase. Ala.Code 1975, § 40-23-26; State v. T.R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185 (1961).
Finally, the commissioner argues that Dixie Color's sales are subject to taxation as being "gross proceeds of sales," under § 40-23-1(a)(6), Ala.Code 1975. The Code defines "gross proceeds" to be "the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business." § 40-23-1(a)(8), Ala.Code 1975. However, an exemption is provided for "property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale." § 40-23-1(a)(6), Ala.Code 1975.
The commissioner urges that Moore-Handley did not manufacture any product in which it included the supplements and was, in fact, the consumer of these supplements. We agree that Moore-Handley did not manufacture the supplements, or any product of which they became a part, but we do not agree that it consumed them. The supplements were printed with the intended purpose of being inserted and resold as part and parcel of the newspaper. The commissioner acknowledges that had the newspapers purchased the supplements from the same printer for insertion in the newspaper, the "component part" exemption would apply and no tax would be due. The supplements are just as much a part of the newspaper when ordered by Moore-Handley as they are when ordered by the newspaper. We see no reason why the tax consequences of identical transactions should differ, based entirely and solely on who makes the purchase.
Clearly, the legislature has the power to impose a tax on retail sales within this state. But an uneven application of sales tax statutes, as shown by Rule P18-031, among members of the same class, based *1254 solely on who purchases these newspaper supplements, is both unfair and constitutionally unacceptable. For purposes of taxation, all purchasers of newspaper advertising supplements that are, in fact, inserted and distributed in the newspaper must be treated equally. It is within the prerogative of the commissioner to treat the sale of printed advertising supplements as retail sales when sold to the original purchaser, but he cannot treat the transaction differently simply because the purchasers are not the same. It is the transaction which is taxable and not the identity of the purchaser.
We hold that, under the facts in this case, an advertising supplement, which is printed solely for the purpose of being inserted into a newspaper and distributed in the newspaper, is an integral part of that newspaper. Daily Record Co. v. James, 629 S.W.2d 348 (Mo.1982). Moore-Handley pays the newspaper by linear inch as it does for any other advertisement carried in the paper. The fact that the supplements are not printed directly by the newspaper does not change the result. Sears, Roebuck and Co. v. State Tax Commission, 370 Mass. 127,345 N.E.2d 893 (1976).
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER, J., dissents.

On Application for Rehearing
SHORES, Justice.
The application for rehearing filed in the above cause on October 1, 1982, is hereby denied.
OPINION CORRECTED; APPLICATION DENIED.
TORBERT, C.J., and JONES, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER, J., dissents.
NOTES
[1] Pursuant to § 11-51-201, Ala.Code 1975, all sales taxes levied or assessed by any city or town are governed by state sales tax laws and, under § 11-51-207, are administered and collected by the Department of Revenue.
[2] A small number of the newspaper supplements printed were used by Moore-Handley as store circulars. Plaintiffs acknowledge those supplements are subject to retail sales tax and do not challenge any payments made with regard to those supplements.