This appeal arose out of a declaratory judgment action to determine whether the publication known as Baldwin People is qualified to publish legal advertising in Baldwin County, pursuant to Code 1975, § 6-8-60.
Gulf Coast Media, Inc., owns four local newspapers in Baldwin County. Gulf Coast Media brought this action against the Mobile Press Register, Inc., as owner of the Baldwin People. Published weekly, the Baldwin People is circulated as an insert in the Thursday edition of the Mobile Register (morning paper) and theMobile Press (afternoon paper) and mailed from Mobile to Baldwin County or sold in Baldwin County newsstands. The publication carries news of interest to Baldwin County residents and advertisements primarily from Baldwin County advertisers. The Baldwin People has Baldwin County offices in Bay Minette, Foley, and Fairhope.
The trial court, sitting without a jury, held that theBaldwin People is qualified under Alabama Code § 6-8-60 to publish legal notices in Baldwin County. Gulf Coast Media appeals.
Alabama's legal notice statute, Alabama Code 1975, § 6-8-60
provides as follows: *Page 1213 
 "The party in interest or at whose instance the publication of notice is to be given by advertisement in a newspaper may designate the newspaper in which such advertisement shall be made. If the officer charged with the duty of making the advertisement disregards such designation and makes advertisement in some other paper, he must pay the cost thereof and shall not be entitled to reimbursement; but all publications required by any law, mortgage or other contract to be published in a newspaper must be published in any newspaper printed in the English language which has a general circulation in the county, regardless of where the paper is printed, if the principal editorial office of the newspaper is located within the county and which newspaper shall have been mailed under the second class mailing privilege of the United States postal service from the post office where it is published for at least 51 weeks a year."
The Mobile Press Register contends that the statute should be broadly construed. It argues that the mandates of the statute are satisfied if its general purpose, to give legal notice, is achieved. We disagree.
The cardinal rule for construction of a statute is to ascertain the legislative intent, which must be determined by examining the statute as a whole in light of its general purpose. Vick v. Bishop, 252 Ala. 250, 40 So.2d 845 (1949);State ex. rel. Moore v. Strickland, 289 Ala. 488, 268 So.2d 766
(1972). Legal notice statutes are principally designed to assure that notice of legal or official proceedings is given to those persons who have or who may have an interest therein. This purpose is best served by a newspaper with a fixed local character. Annot. 26 A.L.R.2d 655, 662 (1952).
While many jurisdictions utilizing this approach suggest a broad or liberal construction of legal notice statutes, seee.g. Dearborn Independent, Inc. v. City of Dearborn, 331 Mich. 447, 49 N.W.2d 370 (1951); Wymore Arbor State, Inc. v. Korinek,182 Neb. 557, 156 N.W.2d 24 (1968), we are of the opinion that strict compliance with the plain language of § 6-8-60 is more appropriate in this case. To hold otherwise would be to emasculate the express statutory requirements of the statute. It is presumed that the legislature does not use statutory language without any meaning or application. Robinson v. State,361 So.2d 1113 (Ala. 1978); Wright v. Cutler-Hammer, Inc.,358 So.2d 444 (Ala. 1978).
If we have strict compliance with the specific statutory requirements, an individual seeking notice could expect, and would be able, to find a required notice within a limited number of county newspapers. An individual would not need, as in the instant case, to purchase and look in the Mobile papers to find legal notices from Baldwin County. To hold otherwise might force those looking for a legal notice to make the proverbial search for a needle in a haystack.
Thus in order to determine whether the Baldwin People is qualified to publish legal notices for Baldwin County, we must determine whether the express mandates of the statute have been complied with.
Section 6-8-60 provides that legal notices must be published in a newspaper printed in the English language which has a general circulation in the county. While it is uncontroverted that the Baldwin People is printed in the English language, and that it has a general circulation in Baldwin County, we must initially address the issue of whether the Baldwin People
qualifies as a newspaper.
Although the term "newspaper" has not been defined by statute or case law in Alabama, several definitions can be found in the case law from other jurisdictions. 66 C.J.S. Newspapers § 1 (1950). In Caldor, Inc. v. Heffernan, 183 Conn. 566,440 A.2d 767 (1981), the Connecticut Supreme Court addressed the issue of whether an advertising supplement inserted into a newspaper qualifies as a newspaper for tax exemption status. In reaching its conclusion, the Connecticut court reviewed the definition of *Page 1214 
the term "newspaper" as articulated by other jurisdictions, and determined:
 "All the definitions identify two common characteristics of a newspaper: (1) It is published at short, regular intervals, usually not exceeding a week, and (2) it routinely reports a myriad of topics so that it appeals, at least in part, to a wide spectrum of the general public."
Caldor, supra, 183 Conn. at 572, 440 A.2d at 770-71.
While we recognize that according to this broad definition the Baldwin People could be characterized as a newspaper, we nevertheless conclude that such a publication loses its status as a newspaper, for purposes of the legal notice statute, when it is inserted into and distributed with a parent newspaper.
In Friedman's Express, Inc. v. Mirror Transp. Co., 71 F. Supp. 991
(D.N.J. 1947), aff'd, 169 F.2d 504 (3d Cir. 1948), the court found that the comic section was an "integral part" of a newspaper for taxation purposes. The court held that it was the sum total of all of the sections and features which makes up the entire publication known as a newspaper:
 "All of this melange is contained in what are known as special sections of the paper. There is the advertising section, the home section, the magazine section, the financial section, the sports section and the news section, each with its appeal to various members of the family. The collection in its entirety is recognized as a Newspaper and is carried and distributed as such without distinction as to sections."
Friedman's Express, supra, 71 F. Supp. at 992.
The only Alabama case we have found dealing with published material which is inserted into a newspaper is Eagerton v.Dixie Color Printing Co., 421 So.2d 1251 (Ala. 1982). InEagerton, this Court found that an advertising supplement which is inserted into a newspaper and distributed along with that newspaper, is considered an integral part of that newspaper for sales tax exemption purposes.
This Court clearly recognizes the distinction between an advertising supplement or a comic section, and a news publication covering a myriad of topics, such as the BaldwinPeople. Nevertheless, the fact that the Baldwin People is similarly inserted into, and distributed along with, another publication allows us to conclude by analogy that the BaldwinPeople, in its present form, is an "integral part" of a newspaper rather than a newspaper in and of itself. A consumer cannot subscribe to or purchase the Baldwin People by itself. It has no circulation of its own, other than in conjunction with the Mobile papers. Much like the sports section or any other special interest section, the Baldwin People carries a section letter designation — "Section G."
Based upon the foregoing discussion, we also must conclude that the "principal editorial office" of the Baldwin People is necessarily in Mobile, as is the office of the Mobile Press and the Mobile Register. The term "principal" as used in the statute clearly allows for only one main, primary, chief office where the major editorial functions occur for the entire newspaper. The evidence presented at trial indicates that the majority of the editorial and policy decisions are made in Mobile, whether it is for the sports section or for the BaldwinPeople. It is in the Mobile office where Graham Heath, the editor of the Baldwin People, conducts over half of the business functions in preparing the Baldwin People for publication. The Mobile office is also where Graham Heath reports to his superiors.
We, therefore, conclude that the Baldwin People is not qualified to publish legal notices in Baldwin County pursuant to § 6-8-60, as it is not a newspaper whose principal editorial office is located within the county. Accordingly, since we have resolved this issue in favor of Gulf Coast Media, we pretermit discussion on the issue of whether the Baldwin People has been "mailed under the second class mailing privilege of the United States postal service *Page 1215 
from the post office where it is published for at least 51 weeks a year" within the meaning of § 6-8-60.
We also do not agree with the Mobile Press Register's contention that if we find that the Baldwin People does not qualify under § 6-8-60 then the statute is unconstitutional. The Mobile Press Register argues that since the Baldwin People
satisfies the purpose of the statute as well as, if not better than, other publications that do qualify under § 6-8-60, then the statute denies the publisher of the Baldwin People equal protection under the law. Statutory classifications not involving a suspect class or fundamental right need only have a rational basis to withstand scrutiny under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Bell v. Chisom, 421 So.2d 1239, 1242 (Ala. 1982).
In this case the statutory classification is rationally related to the promotion of a valid legislative purpose; that being dissemination of public official notices in a bona fidenewspaper which has a fixed local character and nexus to the county, so that individuals are not required to search widely to find official notices. Additionally, we note that the second class mailing permit requirement, although not discussed in this opinion, has been held not to be a constitutionally impermissible delegation of the legislative authority. Seee.g., North Jersey Suburbanite Co. v. State, 154 N.J. Super. 126, 381 A.2d 34 (1977); East Suburban Press, Inc. v. Townshipof Penn Hills, 40 Pa. Commw. 438, 397 A.2d 1263 (1979).
We, therefore, reverse and remand.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.