No. 57,992

In the Matter of the Appeal of K-Mart Corporation From an Order of the Director of Taxation.

(710 P.2d 1304)

Opinion filed December 6, 1985.

*Cleo G. Murphy*, of the Kansas Department of Revenue, of Topeka, argued the cause and *William L. Edds*, general counsel, and *Nancy E. Freund*, of the same agency, were with her on the brief for appellant.

*Benjamin J. Neill*, of Perry & Hamill, of Overland Park, argued the cause and was on the brief for appellee, K-Mart Corporation.

*Mark V. Beshears*, of Colmery, McClure, Letourneau, Entz & Merriam, P.A., of Topeka, was on the *amicus curiae* brief for The Kansas Press Association.

The opinion of the court was delivered by

HOLMES, J.: The Kansas Department of Revenue (KDR or Department) appeals from an order of the State Board of Tax Appeals (BOTA) holding that advertising supplements of K-Mart Corporation (K-Mart) distributed in local newspapers across the state are not subject to the Kansas compensating or use tax set forth at K.S.A. 79-3701 *et seq.*

K-Mart contested the KDR assessment of $25,198.00 tax and $9,165.00 interest for the period January 1, 1980, through December 31, 1982. Upon appeal that assessment was abated by the BOTA. The KDR appealed that decision to the Court of Appeals pursuant to K.S.A. 1984 Supp. 74-2426(b)(2). The appeal was subsequently transferred to this court as provided by K.S.A. 20-3018(c). An identical factual situation was previously before this court in *In re K-Mart Corp.*, 232 Kan. 387, 654 P.2d 470 (1982), hereinafter *K-Mart I.*

The facts stated in *K-Mart I* were:

"The dispute concerns the purchase, by K-Mart, of certain advertising circulars for distribution in Kansas. K-Mart, for reasons of economy, high-quality impact, and national uniformity of style, purchases the circulars from a print source in Michigan. The printer, pursuant to its contract with K-Mart, then drop-ships the circulars to various newspaper companies throughout the nation as designated by K-Mart. The newspaper companies then, pursuant to a separate agreement with K-Mart, insert the advertising supplements into certain editions of their papers for distribution to their subscribers and other consumers. No sales tax on the supplements is paid by K-Mart to the State of Michigan."

In *K-Mart I* the BOTA had upheld the order of the KDR assessing the compensating tax and that order was upheld upon appeal to the district court. K-Mart's appeal from the district court was dismissed due to a lack of jurisdiction based upon procedural deficiencies. It is noted that the statute which provided for appeals to the district court has been amended and that step in the appeal process has been eliminated for certain types of orders of the BOTA. See K.S.A. 1984 Supp. 74-2426(b)(2). Additional facts necessary for the resolution of the various issues on appeal will be set forth as they become necessary.

K.S.A. 79-3703, which provides for the imposition of the compensating tax, provides:

"There is hereby levied and there shall be collected from every person in this state a tax or excise for the privilege of using, storing, or consuming within this state any article of tangible personal property. Such tax shall be levied and collected in an amount equal to the consideration paid by the taxpayer multiplied by the rate of three percent (3%). All property purchased or leased within or without this state and subsequently used, stored or consumed in this state shall be subject to the compensating tax if the same property or transaction would have been subject to the Kansas retailers' sales tax had the transaction been wholly within this state."

It has long been recognized that the retailers' sales tax act (K.S.A. 79-3601 *et seq.*) and the compensating tax act (K.S.A. 79-3701 *et*

*seq.*) complement each other and are to be construed together. See *J.G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, 680 P.2d 291 (1984), and cases cited therein. The compensating tax was enacted to assure that purchases outside of Kansas of tangible personal property, which is brought into and used in Kansas, are subjected to the same rate of tax as if the purchase were made within the state. As with the sales tax, the consumer or use tax is to be paid by the ultimate consumer of the product. K.S.A. 79-3705a; *Southwestern Bell Tel. Co. v. State Commission of Revenue and Taxation*, 168 Kan. 227, 233, 212 P.2d 363 (1949). K.S.A. 79-3702(b) provides that words and phrases defined in K.S.A. 79-3602 shall, when applicable, have the same meaning under the compensating tax act.

K.S.A. 79-3602 provides, in pertinent part:

"(e) 'Retail sale' or 'sale at retail' means all sales made within the state of tangible personal property or electrical energy, gas, water, services or entertainment for use or consumption and not for resale.

. . . .

"(l) 'Ingredient or component part' means tangible personal property which is necessary or essential to, and which is actually used in and becomes an integral and material part of tangible personal property or services produced, manufactured or compounded for sale by the producer, manufacturer or compounder in its regular course of business. The following items of tangible personal property are hereby declared to be ingredients or component parts, but the listing of such property shall not be deemed to be exclusive nor shall such listing be construed to be a restriction upon, or an indication of, the type or types of property to be included within the definition of 'ingredient or component part' as herein set forth:

. . . .

"(4) Paper and ink used in the publication of newspapers."

K.S.A. 79-3606 specifies certain exemptions from the tax and provides in part:

"The following shall be exempt from the tax imposed by this act:

. . . .

"(m) all sales of tangible personal property which become an ingredient or component part of tangible personal property or services produced, manufactured or compounded for ultimate sale at retail within or without the state of Kansas; and any such producer, manufacturer or compounder may obtain from the director of taxation and furnish to the supplier an exemption certificate number for tangible personal property for use as an ingredient or component part of the property or services produced, manufactured or compounded."

The BOTA, in determining that the K-Mart advertising supplements were not subject to the compensating tax, concluded

that the purchase of the supplements was not a "sale at retail" and, in addition, that the supplements are a component part of the newspaper. We now turn to the issues on appeal.

Appellant asserts that the action of the BOTA was arbitrary because it failed to follow the earlier ruling in *K-Mart I* and did not articulate its reasons for not following the earlier ruling. The rule in Kansas, which is acknowledged by the appellant in its brief, is that the doctrine of stare decisis is inapplicable to decisions of administrative tribunals. *Warburton v. Warkentin,* 185 Kan. 468, 345 P.2d 992 (1959); Ryan, Kansas Administrative Law with Federal References p. 18-3 (2d ed. 1985). There is no rule in Kansas that an administrative agency must explain its actions in refusing to follow a ruling of a predecessor board in a different case or that it must articulate in detail why the earlier ruling is not being followed. The order in *K-Mart I* consisted of only three pages, completely lacked any authority to support either party's position and concluded by summarily stating the supplements were not obtained for purposes of later resale nor were they an integral part of the newspaper. In comparison, the order in this case is comprehensive, examines cases and authorities from other jurisdictions and ultimately determines the issues in favor of K-Mart. We find no merit in appellant's first issue.

The next issue asserted by the KDR is that K-Mart's contracting with the printers for the advertising supplements, and their later delivery to the newspapers for distribution, is a sale of tangible personal property at retail. K.S.A. 79-3704(b) exempts transactions "other than at retail; as defined in K.S.A. 79-3602" from the compensating tax. Appellant contends that K-Mart purchases the advertising supplements out of state and does not resell them to the newspaper. While this is true, it does not take into consideration the true nature of the advertising contracts between K-Mart and the newspapers. Generally, a newspaper contains three types of advertising supplements: supplements printed by printers and sold to advertisers; supplements printed by printers and sold to the newspapers; and supplements printed by the newspaper. Newspapers also contain run of the press (ROP) advertising, which is the advertising appearing on the same pages as the news articles and other features making up the main body of the newspaper. In addition to the three types of

advertising supplements, there are other supplements which are not printed by the newspaper, such as the Sunday comics, Sunday magazine and weekly television schedules, which are also delivered as a part of the newspaper. All of the advertising, whether ROP or supplement, is charged by the newspaper to the advertiser on a per line or column inch basis. With supplements printed and paid for by the advertiser, in this case K-Mart, there is a 2% to 6% discount from the regular advertising rate because of the paper, ink and processing provided by the advertiser. Whether the supplement is supplied by the advertiser or the newspaper, the nature of the contract between the two is the purchase of advertising. Both parties agree that the purchase and sale of advertising within the state is not subject to the retail sales tax.

The arguments of appellant ignore the basic principle that a sales or use tax is to be paid only once on any particular item and that payment is to be made by the ultimate consumer. In *Southwestern Bell*, 168 Kan. 227, the court explained the theory and application of the tax:

> "There is one basic principle about our sales tax act. It is that the ultimate consumer should pay the tax and no article should have to carry more than one sales tax. The intention was that in the various steps between a loaf of bread and the wheat field the person who bought the wheat from the farmer should not pay a sales tax nor the mill that bought it from the elevator man nor the jobber who bought the flour from the mill nor the baker who bought the flour from the jobber. To prevent such a result as nearly as possible, G.S. 1947 Supp. 79-3602(k) was enacted. It had to be so. It should be noted that for each step from the wheat field to the bakery the title to the wheat and flour passed. It was bought each time with the idea of the title passing and there being a resale. This is not true of the property in question here. When the telephone company buys a pole and sets it in the ground the pole belongs to it and the title does not pass to anyone of the telephone company's service. When the baker buys a new oven or the shoemaker a new machine or the shirtmaker a new sewing machine, he pays a sales tax on these purchases because they are the ultimate consumers, the title has come to rest, no further transfer of title is contemplated." 168 Kan. at 233.

Thus it is clear that the intent of the statutes is that the ultimate consumer pays the tax. Generally, the principal source of income for a newspaper is its advertising revenue. It is the amount of this revenue which determines the ultimate price of the newspaper to the subscriber. While subscription prices do not fluctuate from day to day or month to month based upon the amount of current advertising, there is no doubt that the average revenue generated

from advertising is a major factor in the ultimate determination of the subscription price. Preprinted supplements generate substantial advertising revenue for the newspaper and if they were not accepted and delivered as a part of the newspaper, rates to other advertisers or the subscription price or both would have to be higher to generate sufficient revenue to justify the continued existence of the newspaper. In *Southwestern Bell,* the court pointed out that the passing of title to the ultimate consumer was of significant importance. Here, there can be no doubt that title to the supplements ultimately vests in the subscriber who pays a sales tax upon his purchase of the entire newspaper, including the supplements.

The KDR argues that when the printer bills K-Mart, the sale is complete and in support thereof points out that K-Mart pays the compensating tax on that portion of the supplements delivered to the K-Mart retail outlets *for use therein.* K-Mart readily concedes that each of its stores receives several copies of each supplement to be used by its employees and for the convenience of the customers. Obviously K-Mart is the ultimate consumer of those supplements and it has no objection to paying the tax thereon. A similar distinction was recognized in *Sears, Roebuck & Co. v. State Tax Commission,* 370 Mass. 127, 345 N.E.2d 893 (1976). In *Sears,* supplements distributed to Sears stores in Massachusetts were taxed, but Sears argued that supplements shipped to newspapers and inserted into the newspaper were not subject to sales or use tax. The Massachusetts court found that as the supplements furnished to the newspaper were part of the newspaper and that as the sale of newspapers was exempt from the tax, there was no tax owed by Sears on the supplements shipped directly to the newspapers. In *Eagerton v. Dixie Color Printing Corp.,* 421 So. 2d 1251 (Ala. 1982), the court found that the subscriber or purchaser of a newspaper was the ultimate consumer, stating, "The individual who purchases a newspaper that contains the supplement, along with all other sections of the newspaper, is the ultimate consumer and pays a retail sales tax on that purchase." p. 1253. We hold that the BOTA was correct in finding that the purchase by K-Mart of preprinted supplements is not subject to compensating tax as a "sale at retail."

The third issue raised by appellant is whether K-Mart's supplement became an ingredient or component part of the news-

paper. K.S.A. 79-3606(m) exempts from tax "all sales of tangible personal property which become an ingredient or component part of tangible personal property . . . produced, manufactured or compounded for ultimate sale at retail . . . ." K.S.A. 79-3602(l) defines "ingredient or component part" as "tangible personal property which is necessary or essential to, and which is actually used in and becomes an integral and material part of, tangible personal property . . . manufactured or compounded for sale by the producer, manufacturer or compounder in its regular course of business."

In its order, the BOTA found that the K-Mart supplements are a component part of the newspapers into which they are incorporated and fall within the exemption provided in K.S.A. 79-3606(m). The BOTA's conclusion is supported by *Sears, Roebuck & Co. v. State Tax Commission*, 370 Mass. 127; *Eagerton v. Dixie Color Printing Corp.*, 421 So. 2d 1251; and *Daily Record Co. v. James*, 629 S.W.2d 348 (Mo. 1982).

In *Friedman's Express v. Mirror Trans. Co.*, 71 F. Supp. 991 (D.N.J. 1947), *aff'd* 169 F.2d 504 (3rd Cir. 1948), the court exempted trucks used to transport comic sections from the printer to the newspaper from coverage by the Interstate Commerce Act under a section for vehicles "used exclusively in the distribution of newspapers." The court, in its opinion, described a newspaper:

"The present-day newspaper, in addition to carrying 'items of general news interest,' contains enormous quantities of advertising, political comment, chess problems, cross word puzzles, what are called (and very often with lamentable inaccuracy) comics, and special features of unending variety. The sum total is known as a newspaper, and generally regarded as such. . . . Enormous amounts of advertising are the main source of revenue of dailies, weeklies and monthlies. . . .

"All of this melange is contained in what are known as special sections of the paper. . . . Each section is thus an integral part of the newspaper, made so not because it is physically folded in a news section, but because it has assumed the character of the journal of which it is a part . . . ." 71 F. Supp. 991-992.

In *Eagerton*, 421 So. 2d 1251, the court was faced with an advertiser who contracted with a printer to provide advertising supplements to newspapers. In *Eagerton*, the Alabama Commissioner of Revenue took almost an identical position to that of the KDR in the instant case. The court rejected the State's contention that supplements were not component parts of a newspaper, stating:

"The commissioner urges that Moore-Handley [the advertiser] did not manufacture any product in which it included the supplements and was, in fact, the consumer of these supplements. We agree that Moore-Handley did not manufacture the supplements, or any product of which they became a part, but we do not agree that it consumed them. The supplements were printed with the intended purpose of being inserted and resold as part and parcel of the newspaper. The commissioner acknowledges that had the newspapers purchased the supplements from the same printer for insertion in the newspaper, the 'component part' exemption would apply and no tax would be due. The supplements are just as much a part of the newspaper when ordered by Moore-Handley as they are when ordered by the newspaper. We see no reason why the tax consequences of identical transactions should differ, based entirely and solely on who makes the purchase." 421 So. 2d at 1253.

Appellant relies on a number of cases which have upheld the assessment of use tax on supplements. In *K-Mart Corp. v. S.D. Dept. of Revenue*, 345 N.W.2d 55 (S.D. 1984), the court refused to recognize that advertising supplements are component parts of newspapers for tax exemption purposes. *Cf. Caldor, Inc. v. Heffernan*, 183 Conn. 566, 440 A.2d 767 (1981); *Ragland, Comm'r. v. K-Mart Corp.*, 274 Ark. 297, 624 S.W.2d 430 (1981).

Obviously there is a division of opinion in the case law dealing with this question. The BOTA, in reaching its decision, relied on those cases which hold that a supplement is a component part of a newspaper. In particular, the BOTA adopted much of the reasoning found in *Eagerton*. We agree that the conclusions reached in *Eagerton* and similar cases state the better rule. Advertising, whether run of the press, preprinted supplements provided by the newspaper or preprinted supplements provided by the advertiser, is a component part of the newspaper and we so hold.

Our determination of the foregoing issues requires affirmance of the BOTA order and we see no need to further extend this opinion. We have considered the other issues raised by the appellant and find them to be without merit. The order of the BOTA abating the assessment of compensating tax against K-Mart is affirmed.

HERD, J., dissenting: I disagree with the majority's holding that preprinted advertising supplements are an integral and component part of a newspaper. It discriminates against advertisers who have their advertising supplements printed in Kansas and distributed by a newspaper over those who use out-of-state

printers. The Kansas printers must collect Kansas sales tax while the out-of-state printers do not.

As noted by the majority, there is a clear division of authority with respect to the issue of whether preprinted advertising supplements are a component part of the newspaper, and therefore exempt from sales and use tax. A number of jurisdictions have held that advertising supplements do not fall within the newspaper exemption from sales or use tax. See, *e.g., K-Mart Corp. v. S. D. Dept. of Revenue,* 345 N.W.2d 55 (S.D. 1984); *Department of Revenue v. J.C. Penney Co.,* 108 Wis. 2d 662, 323 N.W.2d 168 (Ct. App. 1982); *Caldor, Inc. v. Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981); *Ragland, Comm'r v. K-Mart Corp.,* 274 Ark. 297, 624 S.W.2d 430 (1981). Other jurisdictions have determined that advertising supplements are an integral part of a newspaper and thus are entitled to an exemption from sales or use tax. See, *e.g., Eagerton v. Dixie Color Printing Corp.,* 421 So. 2d 1251 (Ala. 1982); *Sears, Roebuck & Co. v. State Tax Commission,* 370 Mass. 127, 345 N.E.2d 893 (1976); *Daily Record Co. v. James,* 629 S.W.2d 348 (Mo. 1982). See generally Annot., 25 A.L.R. 4th 750.

The majority adopts the reasoning of the Alabama Supreme Court in *Eagerton,* without fully considering what I believe to be the better reasoned analysis of those jurisdictions which have held advertising supplements not exempt from sales and use taxes.

In *Ragland, Comm'r v. K-Mart Corp.,* 274 Ark. 297, a case with closely analogous facts to those of the instant case, the Arkansas Supreme Court held that preprinted advertising supplements which were printed by an out-of-state printer and delivered to in-state newspapers by K-Mart for distribution with the newspapers were not a component part of the newspapers and were not exempt from the use tax as being "newspapers." The Court considered a number of factors in determining whether preprinted advertising supplements are a component part of a newspaper. Those factors were adopted and summarized by the South Dakota Supreme Court in *K Mart Corp. v. S. D. Dept. of Revenue,* 345 N.W.2d at 57-58:

" '1. K Mart owned and thus controlled the supplements until delivery, while the newspaper was merely paid for distributing the supplements.

" '2. The supplements were not prepared by the newspaper.

" '3. The supplements were not a regular feature of a newspaper inasmuch as

they did not appear in each addition of a particular edition of a newspaper.

" '4. Instead of paying for the insertion of the advertising supplement, the newspaper is paid for distributing the advertising supplements.

" '5. Instead of bearing only the logo of a specific newspaper, the advertising supplements bear a logo which is preceded by the words "supplement to."

" '6. The advertising supplements are sometimes offered as free handouts at the stores in addition to being distributed within the newspaper.' "

Applying these factors, it is clear that advertising supplements do not constitute an integral and component part of a newspaper. Advertising supplements are unscheduled, unindexed, and are not a regular feature of the newspaper. The advertising supplements are not printed by the newspaper and no extra charge is made on the day they appear. A newspaper customer is not guaranteed a certain number of such supplements when he buys the paper. The purpose of placing such supplements in the paper is to obtain the least expensive method of distribution. Postage and hand delivery are more costly. Furthermore, the advertising supplements are delivered to customers in other ways and are often available at the retail store.

The majority relies on the case of *Friedman's Express v. Mirror Transp. Co.*, 71 F. Supp. 991 (D.N.J. 1947), *aff'd* 169 F.2d 504 (3d Cir. 1948). There, the court determined that a comic section, which was printed in a separate plant and transported from the printer to the newspaper, was an integral part of the newspaper and had "assumed the character of the journal of which it is a part."

The majority's reliance on *Friedman's Express* for the proposition that an advertising supplement is an integral part of a newspaper is misplaced. In *Caldor, Inc. v. Heffernan*, 183 Conn. at 574-75, the Supreme Court of Connecticut clearly distinguished supplemental advertising preprints and comic sections:

"The preprint supplement is prepared by an entity totally independent of the publisher and is not made a part of the newspaper at short, regular intervals. It is inserted into the newspaper, not as an integral part designed to capture a regular audience, but rather to make use of the newspaper's extensive distribution system. On the other hand, a comic section is inserted at short, regular intervals. It becomes an integral part of the newspaper, not because it is physically folded within any particular edition, but because it contributes to the character of the newspaper. The comic section commands its own regular and faithful following just as do the local and world news sections, the sport page, the editorial page, the letters to the editor, the obituaries, the advice columns, and the classified

advertising section. People buy a newspaper because all these sections are regularly collected together under one mast head thereby attracting a substantial portion of the public and enhancing the appeal of the whole. An advertising supplement, inserted into the newspaper at irregular intervals, is not like a member of the family of sections making up the newspaper, but is more similar to the occasional house guest."

This difference was also discussed in *Department of Revenue v. J.C. Penney Co.,* 108 Wisc. 2d at 671-72. There, the Wisconsin court, in addition to adopting the reasoning of *Caldor* and *Ragland,* noted that since preprinted advertising supplements are not a regular feature of the newspaper, readers do not look forward to reading a particular merchandiser's preprints at short, regular intervals. Thus, the court determined it could not be said that preprinted advertising supplements contributed to the character of the newspaper. 108 Wisc. 2d at 672.

I would adopt the reasoning of those courts holding that preprinted advertising supplements are not an integral and component part of a newspaper and therefore do not qualify for the newspaper exemption from taxation. Such a holding would be in line with the well-settled principle that taxation is the rule and exemptions the exception. Exemption provisions are to be strictly construed against the party claiming the exemption and the burden of proof is on one claiming exemption from taxation. *R. L. Polk & Co. v. Armold,* 215 Kan. 653, 655, 527 P.2d 973 (1974).

This court cannot substitute its judgment for that of an administrative board and on appeal the court is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by the evidence, and (3) the tribunal's action was within the scope of authority. *Hemry v. State Board of Pharmacy,* 232 Kan. 83, 652 P.2d 670 (1982). I contend the BOTA's action is not supported by substantial competent evidence and is unreasonable.

I would reverse and hold K-Mart liable for use tax on its advertising.

PRAGER, J., joins the foregoing dissenting opinion.