The Honorable Jonathan S. Fitch State Senator Route 1 Hindsville, Arkansas 72738
Dear Senator Fitch:
This is in response to your request for an opinion on whether a restaurant which collected the gross receipts tax authorized under A.C.A. 26-75-601 et seq. could now be due a refund of the tax in light of the Arkansas Supreme Court's recent decision in CITY OF HOT SPRINGS v. THE VAPORS THEATRE RESTAURANT, 298 Ark. 444,769 S.W.2d 1 (1989).
For the reasons that follow, it is my opinion that a refund is not due in this instance.
The tax to which you refer is authorized in A.C.A. 26-75-602. The segment of this statute which was in issue in the VAPORS THEATRE case is 26-75-602 (a)(1)(B), which provides as follows:
 Any city of the first class in which is located a national park may, by ordinance of the governing body thereof, levy a tax of not to exceed three percent (3%) upon the gross receipts or gross proceeds from the renting, leasing, or otherwise furnishing of hotel or motel accommodations for profit in the city, or upon the gross receipts or gross proceeds of restaurants, cafes, cafeterias, and other business establishments as defined in the levying ordinance, engaged in the business of selling prepared food for consumption on the premises in the city.
The Supreme Court, in the VAPORS THEATRE case, held that this tax could not lawfully be collected on the sale of mixed drinks because the statute authorizing taxes on mixed drinks, A.C.A.3-9-213 (Supp. 1987), provides that those taxes shall be in lieu of all other special taxes at the retail level. The court did not address the possibility of a refund of any taxes previously collected on the sale of mixed drinks.
In order to resolve your question concerning the possibility of a refund of taxes previously collected, initial reference must be given to the statutes which authorize the three cent "hospitality tax", (as the court in VAPORS THEATRE refers to it). Our review must begin with A.C.A. 26-75-603, which provides:
 (a) From the effective date of the levying ordinance, the tax so levied shall be paid by the persons, firms, and corporations liable therefor and shall be collected by the city which has passed the levying ordinance in the same manner and at the same time as the Arkansas Gross Receipts Act, 26-52-101 et seq.
 (b) The person paying the tax shall report and remit it upon forms provided by the city, and as directed by the city. The rules, regulations, forms of notice, assessment procedures, and the enforcement and collection of the tax under the Arkansas Gross Receipts Act shall, so far as practicable, be applicable with respect to the enforcement and collection of the tax levied pursuant to the authority of this subchapter. However, the administration and enforcement, and all actions, shall be by, and in the name of, the city through the proper city officials.
Although it is unclear from the language above, the "hospitality tax" is collected as a sales tax; i.e., it is added to the sales price of the food or accommodations provided. Consequently, the establishment owners act only as agents of the city in the collection of the tax. They are not the true taxpayers with regard to the amounts they remit.
There is no refund procedure set out in the statutory scheme authorizing the "hospitality tax". The statute above, however, renders applicable all of the enforcement and collection procedures of the Arkansas Gross Receipts Act. That act does not contain a refund procedure either. An individual who seeks a refund for overpayment of STATE sales taxes, could avail himself of the provisions of A.C.A. 26-18-507, which provides in pertinent part:
 (a) Any taxpayer who has paid any state tax to the State of Arkansas, through error or fact, computation, or mistake of law, in excess of the taxes lawfully due shall, subject to the requirements of this chapter, be refunded the overpayment of the tax determined by the director to be erroneously paid upon the filing of an amended return or a verified claim for refund.
* * *
 (d) Notwithstanding any provisions of the law to the contrary, a taxpayer who acts only as an agent of the state in the collection of any state tax shall be entitled to claim a credit or refund of such tax only if the taxpayer establishes that he has:
(1) Borne the tax in question;
 (2) Repaid the amount of the tax to the person from whom he collected it; or
 (3) Obtained the consent of the person to the allowance of the credit or refund.
This procedure is not found in the Gross Receipts Act, but is found in the "Arkansas Tax Procedure Act", which contains general provisions applicable to all state taxes. It is thus unclear whether this provision is applicable to the "hospitality tax" under A.C.A. 26-75-603(b)'s adoption of the procedures under the Gross Receipts Act. If it is, a restaurant owner collecting the hospitality tax would have to show either that he has borne the tax, or that he repaid it, or that he has the consent of the original taxpayer in order to be entitled to a refund. It is my best legal judgment, however, that the refund procedure set out above is inapplicable to the "hospitality tax". This refund procedure governs the refunding of STATE taxes. The "hospitality tax" is a CITY tax, authorized by state law. Additionally, A.C.A.26-75-603(b) adopts procedures found in the "Gross Receipts Act." The refund procedure above is not found in that act.
If A.C.A. 26-18-507 is not applicable, there appears to be no other statutory provision[1] which would authorize the refunding of the sums in issue. This being the case, any refund would have to come about through court action, that is, by virtue of the common law. Here as well, the establishment owner will likely be barred from receiving a refund unless he can show he has in some way borne the tax.[2] Otherwise, the common law doctrine of "unjust enrichment" will prevent the refund. COOK, COMMISSIONER OF REVENUES, v. SEARS-ROEBUCK COMPANY, 212 Ark. 308, 206 S.W.2d 20
(1947). It should be noted, however, that in at least one case, (RAGLAND, COMMISSIONER v. K-MART CORPORATION, 274 Ark. 297,624 S.W.2d 430 (1981)), it was held that where a refund to the original customers was impossible, and the establishment had followed all the statutes explicitly in the collection of the tax, it was entitled to retain excessive sales taxes collected.
That case, however, involved a STATUTORILY granted refund procedure. See A.C.A. 26-18-406. If the procedure discussed earlier, A.C.A. 26-18-507, is not applicable by adoption, and any recovery is strictly pursuant to common law principals, it is my opinion that the common law "voluntariness" doctrine would operate to bar a refund to an establishment owner, EVEN IF HE BORE THE COST OF THE TAX. The doctrine is explained in City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982, as follows:
 Appellee seeks to recover voluntary payments made of taxes. This can not be done. Cooley in THE LAW OF TAXATION, Ch. 20, 1282, gives this rule: `It is well settled that if the payment of a tax is a voluntary payment, it cannot be recovered back, except where a recovery is authorized by the provisions of a governing statute regardless of whether the payment is voluntary or compulsory;' (Vol. 3 at p. 2561); and further: `Where voluntary payments are not recoverable, it is immaterial that the tax or assessment has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it back. Ignorance or mistake of law by one who voluntarily pays a tax illegally assessed furnishes no ground of recovery.'
277 Ark. at 503, 504, citing THOMPSON, COMMISSIONER v. CONTINENTAL SOUTHERN LINES, INC., 222 Ark. 108, 257 S.W.2d 375 (1953).
The only exception to the doctrine was noted by the court in CASH, by quoting the following language from CHAPMAN DEWEY LAND CO. v. BOARD OF DIRECTORS ST. FRANCIS LEVEE DISTRICT, 172 Ark. 414,288 S.W. 910 (1926):
 Under these decisions, the coercion which will render a payment of taxes involuntary must consist of some actual or threatened exercise of power possesses by the party exacting or receiving payment over the person or property, from which the latter has not reasonable means of immediate relief, except by making payment.
But it is insisted by counsel for the plaintiff that the taxes alleged in the complaint takes the case at bar out of the operation of the principle decided in these cases and brings it with the rule announced in DICKINSON v. HOUSLEY, 130 Ark. 259,197 S.W. 25. We do not think so. In that case the collector refused to accept any sum less than the full amount demanded, and had the power to have sold the lands of the taxpayer in payment of the illegal tax. This would have constituted a cloud upon the title, and it became necessary for the owner to pay the illegal demand in order to prevent the sale. No such power existed in the board in the case at bar. If the plaintiff had refused to pay the taxes, the board of directors would have been compelled to institute proceedings against the landowner in the chancery court to collect the taxes, and the plaintiff could have presented the same matters as are set up in this case to defeat the collection of the taxes. In short, it could have defended a suit to collect the taxes upon the same ground that it bases its right to recover the taxes which it voluntarily paid.
277 Ark. at 505, 506, citing CHAPMAN, SUPRA.
Additionally, it appears that the enforcement procedures of the "Gross Receipts Act" would be available to the city, to be utilized by city officials. See again A.C.A. 26-75-603(b). Under the authority of the Gross Receipts Act, the establishment's permit to engage in business can be revoked for non-payment of tax. A.C.A. 26-52-208. Presumably, this would give city officials a right under A.C.A. 26-75-603(b), to revoke a permit for non-payment of tax.[3] It is my opinion, however, that this fact would not render payment of this tax involuntary. An elaborate procedure is set out in A.C.A. 26-52-207 which provides for an appeal of any permit revocation all the way to the Arkansas Supreme Court. An establishment owner wishing not to pay the tax should have simply invited a permit revocation proceeding by non-payment, and set up the fact that the hospitality tax cannot legally be collected on mixed drinks as his defense.
It is thus my opinion that a restaurant owner is not entitled to a refund of any "hospitality tax" collected and remitted under A.C.A. 26-18-507, if applicable, unless he can show that he bore the cost of the tax, repaid it to the customer, or has consent of the real taxpayer. It is my opinion, however, that A.C.A.26-18-507 is probably inapplicable. It is also my opinion that if A.C.A. 26-18-507 is inapplicable, the common law principals of unjust enrichment and the "voluntariness doctrine" would preclude the receipt of a refund even if the restaurant owner bore the cost of the tax.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
[1] A.C.A. 26-35-901 applies only to property taxes, WALTON v. ARKANSAS COUNTY, 153 Ark. 285 (1922), and A.C.A. 26-26-1410
applies only to tangible personal property taxes.
[2] As will be seen in the next paragraph, he will likely be precluded a refund under the "voluntariness doctrine," even if he bore the cost of the tax. It is my opinion that the circumstances required in order to trigger the applicability of the exception are not present in this situation. If an establishment owner refused to collect the "hospitality tax" on the sale of mixed drinks, and therefore refused to remit that amount to the city, it appears that the city's primary recourse would be to institute legal action, (unless the levying ordinance provides otherwise).
[3] It should be noted that A.C.A. 26-75-603(b) adopts the enforcement procedures of the "Gross Receipts Act" "so far as practicable." Whether the power to revoke a permit, which is ordinarily exercisable only by the Director of the Department of Finance and Administration, is given to city officials under A.C.A. 26-75-603(b) is unclear. It may not be "practical". In any event, we will analyze the possibility in an effort to address every possible argument the establishment owner might make.