196 So.2d 358 (1967)
Thad L. FOWLER and Dudley W. Conner
v.
CITY OF HATTIESBURG, Mississippi et al.
No. 44311.
Supreme Court of Mississippi.
March 13, 1967.
*359 Sullivan, Sullivan & Walker, M.M. Roberts, Dudley W. Conner, Hattiesburg, for appellants.
Heidelberg, Sutherland & McKenzie, Frank D. Montague, Jr., Hattiesburg, for appellees.
RODGERS, Justice.
This is an appeal from a judgment of the Circuit Court of Forrest County, Mississippi, rendered June 18, 1966, which upheld and affirmed the action of the Board of Mayor and Commissioners of the City of Hattiesburg in rezoning a certain tract of land from a residential to a commercial district.
The petitioner-appellees, Mrs. Sallie K. Gillespie, Miss Sarah E. Gillespie, owners, and Richard S. Thompson, optionee, sought the change in zoning in order that a large shopping center might be constructed on the thirty-three acres of land involved. Such a proposed shopping center would be composed of some 300,000 square feet of floor space to house an anchor-tenant utilizing 100,000 square feet of floor space, a sub-anchor-tenant utilizing 50,000 square feet of floor space, and thirty tenants utilizing 5,000 feet of floor space each. Approximately twenty-five acres would be allocated to a motor vehicle parking area.
The appellants have contended that the property should not be rezoned for two main reasons: First, that the City has considerably more property commercially zoned than is presently being used for commercial purposes; that a rezoning of the thirty-three acres would probably seriously damage the stability of existing commercial developments in Hattiesburg, both in the central business district and in the smaller local shopping areas. Secondly, that the rezoning of such a large tract of land would adversely affect small residential developments and would destroy citizens' faith in the stability of zoning for the devolopment and maintenance of residential property.
After ten full days of hearing, and after fully considering all of the testimony, exhibits and arguments of counsel, one commissioner and the mayor voted to change the zoning ordinance so as to rezone the land of proponents, Gillespies, from "residential" to "commercial." The other commissioner voted against the proposal. The City Council *360 entered an order, finding as a matter of fact, that the land usage on the street on which the property is located (Hardy Street) has been changing from residential to commercial for fifteen years; that lots on Hardy Street had become commercial to a point only two blocks from the property here involved; that the area West of U.S. Highway 49 is now the fastest growing residential area in the City. The council pointed out that there was relatively little commercially zoned property in the area, and that additional commercial property is needed to serve the residents here. The Council held that it was to the best interest of the City from an economic standpoint, and that to rezone the property would lessen traffic congestion.
The objectors appealed to the Circuit Court of Forrest County, Mississippi, where the record was considered, and argument was presented to the Circuit Judge. The trial judge entered an order sustaining the ordinance of the City Council of Hattiesburg, in which he pointed out that the testimony was sufficient to sustain the order and judgment of the City Council rezoning the lot of land involved to be commercial. Objectors have appealed to this Court, and now contend that the action of the City Council in adopting an amendment to the zoning ordinance is contrary to the public health, morals and safety of the community at large; that it is not in the interest of the general welfare of the municipality as a whole. They contend that the evidence is not sufficient to establish a public need for rezoning; that the action of the City Council under the facts shown was unreasonable, discriminatory, confiscatory, abuse of discretion, arbitrary, capricious and invalid. Appellants also contend that the City Council was in error in not requiring the proponents to present the option given by the proponent landowners to optionee Thompson.
In order to better understand the controversy, a brief resume of the hearing before the City Council should be shown. During the ten days of hearing before the Mayor and Commissioners, sixty-eight exhibits were introduced into evidence, and the testimony of many witnesses, statements of bystanders, and comments of citizens were heard and recorded. It is apparent, and the voluminous record reveals, that the hearing in this case was full and complete.
Mr. Louis C. Bisso, a City Planning Consultant and Civil Engineer, testified that the most appropriate use for the involved land is residential. In his opinion, the rezoning of the property from residential to commercial would be detrimental to the general welfare. He stated that the central business district of Hattiesburg would be adversely affected by a shopping center of this magnitude; that, at the present time, Hattiesburg is abundantly supplied with commercial area; that such zoning would adversely affect the University; that such zoning as that proposed would be spot zoning; and that there were other more appropriately zoned commercial areas on which to locate the shopping center where the invasion of residential area is not necessary. Several local residents testified that such rezoning would destroy their privacy; they stated that they would not have purchased lots in the area if they had known that the property would be rezoned. Many local businessmen testified that, in their opinion, such a shopping center would not bring business to Hattiesburg, but rather, it would divide the present business and would have a destroying effect. They stated that local stores had available all of the merchandise that was in demand by the greatest percentage of the population. Several other witnesses felt that the construction of the shopping center would create substantial traffic hazards and would endanger children. By stipulation, thirteen other witnesses would testify that the proposed shopping center was not needed, and that if it were constructed its effect upon downtown Hattiesburg would be disastrous and that it would not produce any additional buying power in the area.
*361 Richard S. Thompson, promoter of the plan to construct the shopping center, testified that the shopping center would contain an indoor all-weather, air conditioned and heated mall, and that the twenty-five-acre parking area would be large enough to provide off-street parking for all shoppers, thereby eliminating any traffic congestion normally found in other commercial areas where customers must park on the streets. He anticipates that when fully occupied the center will provide a minimum of $15,000,000 additional sales in the City of Hattiesburg, and that sales taxes, ad valorem taxes, licenses and other taxes can be expected to produce approximately $250,000 annually to the City. He estimated that 215 additional jobs would be created. Dr. Bill Williams, a marketing specialist, estimated that $76,000,000 available in the Hattiesburg trade area was not being spent there. He explained that the construction of the large shopping center would increase the total amount of dollars spent in Hattiesburg and would "expand" the trade area and draw shoppers from a much wider area. Dr. Williams conducted a survey in which approximately eighty per cent of the adult householders were interviewed. The results were as follows: Forty-six per cent of the residents shopped outside of Hattiesburg an average of almost six times a year; sixty-four per cent felt Hattiesburg needs a shopping center; and sixty-three per cent would like to see a shopping center located at the precise location. In summary, Dr. Williams testified that he was employed to conduct an economic feasibility survey and his studies indicated that there was an economic need for the center. He found no sites in Hattiesburg as desirable for the center as the Gillespie property. There was also testimony as to signficant changes in the area involved; the completion of Highway 1-59 just west of the corporate limits, the four-laning of Hardy Street, and the rapid and continued westward growth of Hattiesburg.
There was some conflict in the testimony of Dr. Williams and Mr. Bisso. Also, the testimony indicated that many of the downtown merchants felt that it would be undesirable to have another shopping center. An expert in the field, Dr. Williams, felt that the center was needed. Also, approximately sixty-four per cent of the local residents favored the construction of another shopping center. The Mayor and Commissioners and the lower court considered the conflicting testimony and the relevant facts and determined that the property should be rezoned.
It is apparent that the new shopping center would create more competition between Hattiesburg merchants. It is also true that some individuals would not benefit from the construction of the center. However, the rule is stated in 101 C.J.S. Zoning § 2, p. 665 (1958), as follows:
"The design is to promote the common good of all the people in the community, or the welfare of the community as a whole, rather than to further the desires or interests of a particular class, group, or individual in that community, or to protect the value of the property of particular individuals. So, the purpose of zoning is not to limit or restrict competition, and a zoning ordinance cannot be used to control competition." (Emphasis added.)
Both the appellant and the appellee rely heavily upon the recent case of Lewis v. City of Jackson, 184 So.2d 384 (Miss. 1966). This Court held that the ordinance rezoning property involved from residential to commercial was invalid because the City's action was unreasonable, arbitrary and capricious. Although the factual situation in the Lewis case was quite different from the factual situation involved here, it should be noted that the basis for the decision in the Lewis case was the lack of change in the area since the property was last zoned. This Court stated:
"We are also mindful of the rule of law that we will not disturb a finding of the City that conditions have changed so as *362 to warrant rezoning if the question is fairly debatable. The difficulty here is that there is no finding by the City Council of any changes and no evidence to support such findings, had it been made." 184 So.2d at 388.
In the present case, there have been a number of significant changes in the area since it was last zoned in 1958. The present case is clearly distinguished from the Lewis case.
Zoning ordinances are the legislative acts of the municipality and this Court will not set aside such an ordinance unless the action of the municipality appears to be arbitrary, discriminatory, confiscatory or an abuse of discretion. In a 1962 case, Ridgewood Land Company v. Simmons, 243 Miss. 236, 137 So.2d 532, this Court stated:
"As a general rule an appellate court will not interfere with the legislative authority of the governing bodies of a municipality or county, nor will it substitute the Court's judgment for the judgment of a governing body * * * but reviews acts of governing authorities to determine whether such acts are reasonable, arbitrary, discriminatory, confiscatory or an abuse of discretion * * *

"This Court will not pass upon the wisdom or policy of a rezoning order because that is a question for the determination of the Board * * *." (Emphasis added.) 243 Miss. at 248-249, 137 So.2d at 536-537.
On appeal to this Court from a zoning ordinance of a municipal council, or board of mayor and aldermen, the presumption is in favor of the reasonableness of the ordinance, and although this presumption must, of course, yield to facts to the contrary; still every intendment is to be made in favor of the reasonableness of the exercise of municipal police power in making regulations. Unless the ordinance is clearly invalid, the courts will not so declare.
The trial court reached the conclusion that the ordinance here in question rezoning the property of the proponent landowners, was not arbitrary, discriminatory, or an abuse of discretion on the part of the City Council, and after having examined the full record including the exhibits, we too have reached the conclusion that the testimony of the entire community shown in the record indicates that the trial court was not in error in sustaining the amendment to the zoning ordinance of the City of Hattiesburg.
We have examined the objections made to the testimony at the hearing before the Mayor and City Council, and although the testimony was introduced in an informal manner, and much of it was repetitious, and some of it was perhaps incompetent, we are of the opinion that the acceptance and rejection of the evidence was largely discretionary with the Mayor and City Council. We do not find that the hearing violated the appellants' constitutional right to due process of law.
Had this case been presented to the members of this Court, as an original case, or if members of this Court had been members of the Board of Mayor and Council of the City of Hattiesburg, they perhaps would not have voted to amend the city zoning ordinance so as to rezone the property here involved on the facts shown in this record. We do not pass upon the wisdom of the action of the members of the Mayor and City Council in performing their discretionary, legislative acts. It is only when their acts under their police power become arbitrary, capricious, confiscatory or fraudulent, that this Court will interfere with the ordinary performance of their duties so as to set aside a municipal ordinance.
The judgment of the trial court will be affirmed.
Affirmed.
ETHRIDGE, C.J., and JONES, BRADY and SMITH, JJ., concur.