335 So.2d 892 (1976)
ROBINSON INDUSTRIES, d/b/a McDonald's Restaurant
v.
CITY OF PEARL, Mississippi.
No. 48699.
Supreme Court of Mississippi.
July 27, 1976.
*893 Young, Young & Scanlon, Robert B. Sessums, John Howard Shows, Jackson, for appellant.
Bacon & Smith, Arthur F. Jernigan, Jr., Jackson, for appellee.
Before PATTERSON, ROBERTSON and BROOM, JJ.
PATTERSON, Presiding Justice, for the Court:
Robinson Industries, doing business as McDonald's Restaurant, filed a bill of exceptions in the Circuit Court of Rankin County seeking review of an order of the Board of Aldermen of the City of Pearl. The order denied McDonald's permission to erect a restaurant sign above the height limitation established by an ordinance of the city. The court overruled the bill and from that order McDonald's prosecutes this appeal.
*894 There were no municipal ordinances regulating the heights of signs within Pearl prior to May 7, 1974. Before this time McDonald's had completed its plans for the construction of a restaurant within the municipality. In addition to the restaurant building the plans included the erection of a distinctive "golden arches" sign seventy-five feet in height. The construction of the restaurant began March 13, 1974. The mayor and board of aldermen on April 2, 1974, declared their consideration of comprehensive zoning ordinances, including a zoning map, for adoption by the municipality. Notice was published on April 4 and 11, 1974, that such zoning ordinances had been filed with the city clerk and that a public meeting for objections to the proposals would be held April 22, 1974. The appellant did not protest the pending ordinances.
The appellant submitted its plan for the construction of the sign for contract on April 2, 1974. The proposal was accepted by Tennessee Continental Corporation on April 25, 1974, and a contract was entered into for its erection.
On August 8, 1974, construction began on the "golden arches" sign after the restaurant building had been substantially completed. A building inspector of the city then advised the contractor not to erect the sign because it would exceed the thirty-foot height limitation of the city ordinance. McDonald's protested this interpretation of the zoning ordinance, setting forth its reasons by letter to the mayor of the city. The protest was referred to the planning commission for its recommendation. The commission voted to deny the permit, believing it varied from the law. The board of aldermen on October 1, 1974, also denied McDonald's request to erect a sign seventy-five feet in height. This order was affirmed by the circuit court.
The first issue is whether the limitation on the height of signs in industrial districts has application within the commercial district wherein McDonald's restaurant and sign were located. Sections 502.8 and 502.9 of the proposed ordinances, now the ordinances of the city, provide in part as follows:

502.8 Signs in Commercial and Industrial Districts. The limitations as to number and area of signs in Commercial and Industrial Districts shall apply separately to separate establishments, with the area of signs computed on the basis of the actual width of building frontage occupied by the particular establishment. Business signs identifying products or services available on the premises or advertising a use conducted thereon may be displayed in Commercial and Industrial Districts under the conditions and to a maximum aggregate area of all signs as follows.

502.9 Signs in Industrial Districts. Outdoor advertising signs, billboards and poster panels as separate uses, subject to the following:
* * * * * *
(2) Maximum height: thirty (30) feet measured from the nearest street grade line; there shall be no required minimum height.
The first section refers to both commercial and industrial districts in the title and body of the enactment. The sequence of the sections, as well as the concluding words "as follows" of the first, establish, without doubt, we think, the pari materia status of the sections. No reference is made in Section 502.9, however, to the word "commercial" or "commercial districts." It mentions only "signs in industrial districts" and in subsection (2) limits them to thirty feet in height. We are of the opinion the omission of "commercial" or "commercial districts" from Section 502.9 was an inadvertence or oversight not affecting the intention of the ordinance to limit signs to a height of no more than thirty feet in both commercial and industrial districts.
Moreover, Section 802 (omission clause) of the proposed ordinance of Pearl, now the ordinance, states that the omission of any specific "word" shall not be interpreted as permitting any variation from the general *895 meaning or intention of the ordinance. In considering Section 502.8 (commercial and industrial districts) in pari materia with Section 502.9 (industrial districts), which contains subsection (2) (height limitation of thirty feet), the overall intention of the ordinance is apparent and that is, its general purpose was to shield the municipality from signs in excess of thirty feet in height. The incongruity of limiting the height of signs in an industrial district, but permitting unrestricted height in an area of higher classification, a commercial district, leads to a strained construction that we cannot adopt. We conclude the sections do not afford an interpretation permitting signs in excess of the limitation in commercial districts even though Section 502.9 does not specifically allude to such area.
Zoning ordinances are essentially legislative functions with limited judicial review. City of Jackson v. Ridgway, 261 So.2d 458 (Miss. 1972), and see Fowler v. City of Hattiesburg, 196 So.2d 358 (Miss. 1968), where it is held:
On appeal to this Court from a zoning ordinance of a municipal council, or board of mayor and aldermen, the presumption is in favor of the reasonableness of the ordinance, and although this presumption must, of course, yield to facts to the contrary; still every intendment is to be made in favor of the reasonableness of the exercise of municipal police power in making regulations. Unless the ordinance is clearly invalid, the courts will not so declare.
* * * * * *
... It is only when their acts under their police power become arbitrary, capricious, confiscatory or fraudulent, that this Court will interfere with the ordinary performance of their duties so as to set aside a municipal ordinance. (196 So.2d at 362).
The appellant had notice of the pendency of the ordinance at the time it entered into the contract for the construction of the sign. The ordinance was in effect on August 8, 1974, when construction actually began. There is nothing to indicate that the ordinance was unreasonable or that its formulation by the city in the exercise of its police power was arbitrary, capricious or confiscatory. We, therefore, are of the opinion that the presumption of reasonableness extends to the ordinance and that its validity was correctly upheld by the circuit court.
The next issue is whether near completion of the restaurant building with substantial expenditures prior to the adoption of the ordinance made its height limitation inapplicable to the construction of the sign. There were no restrictive ordinances within the municipality when McDonald's made its plans for the construction of its restaurant and there were signs in the area above the present height limitation. However, the restaurant building and the sign were separable from each other and were the subjects of separate construction contracts. Moreover, the initial construction on the sign did not begin until August 8, 1974, four months after the mayor and board of aldermen had publicly and officially declared their consideration of the adoption of comprehensive zoning ordinances. The appellant's expenditures on the sign, in our opinion, were not substantial at the time it had notice of the impending zoning ordinances. In McQuillin, Municipal Corporations, section 25.157 at 501-502 (1965) an analogous situation is discussed. It states:
A permit is not protected, however, against revocation by subsequent zoning legislation where changes of position, expenditures or incurrence of obligations under the permit have been minor, minimal, or relatively insignificant, i.e., not substantial. The test is sometimes said to be whether actual construction has begun or whether the land was physically used for the construction contemplated, and not alone whether money has been spent in the preparation to build... . The test of substantiality of expenditure in this connection, however, cannot be met by the mere isolated, unrelated recitation of a dollar figure, but substantiality is to be determined, rather by an assessment *896 of the proportion which the expenditure bears to the total expenditure which would be required to complete the proposed improvement.
McDonald's expenditures toward erection of the sign were not so substantial as to grant it the vested right to continue the construction in derogation of the ordinance.
The substantiality test is also qualified by notice, actual or constructive, of the permittee of the pendency of a zoning amendment. In McQuillin, Municipal Corporations, section 25.157 at 502-503 it is stated that the rule has no application for variance from the ordinance when the affected party has notice. Sharrow v. Dania, 83 So.2d 274 (Fla. 1955), expresses this same rule. Indeed, it seems to be the general rule. The continued expenditures for the erection of the sign after appellant had notice of the pending ordinance affords no basis, in our opinion, for its invalidation.
AFFIRMED.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.