# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00405-SCT

*GANNETT RIVER STATES PUBLISHING
CORPORATION d/b/a THE CLARION-LEDGER
AND THE CITY COUNCIL OF JACKSON,
MISSISSIPPI*

*v.*

*JACKSON ADVOCATE AND CHARLES TISDALE*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/20/2002 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LUTHER T. MUNFORD |
| | MARK DAVID FIJMAN |
| | CHRISTOPHER ROYCE SHAW |
| | SHARON DIANE GIPSON |
| | TERRY WALLACE |
| ATTORNEYS FOR APPELLEES: | IMHOTEP ALKEBU-LAN |
| | CHOKWE LUMUMBA |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 07/31/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1.     As the lowest bidder, Gannett Rivers States Publishing Corp. d/b/a *The Clarion-Ledger* was

awarded by the Jackson City Council the contract to publish legal notices for 2002.  On appeal, the Hinds

County Circuit Court granted a temporary restraining order in favor of *The Jackson Advocate* (and its

publisher Charles Tisdale), the second lowest bidder.  Following a hearing, the circuit court ruled that *The*

*Clarion-Ledger* submitted an unqualified bid; and, therefore, *The Jackson Advocate* was the lowest qualified bidder.

¶2.	This Court granted *The Clarion-Ledger*'s Motion for Stay of Judgment Pending Appeal. We reverse and render on the sole issue presented on appeal.

## FACTS

¶3.	On December 6, 2001, the City of Jackson published notice that it was taking bids for the 2002 contract to publish legal notices. The city received three bids: (1) *The Clarion-Ledger/Focus* section (NE, NW & S), (2) *The Jackson Advocate*, and (3) *The Mississippi Link*. The "Focus" is a section included in Thursday edition of The *Clarion-Ledger* sold in Jackson.

¶4.	The city council considered bids during two meetings. On December 27, 2001, Councilmen Stokes argued that the "Focus" section of *The Clarion-Ledger* was a free insert, which could not qualify under the statute governing legal notices. *See* Miss. Code Ann. § 13-3-31 (Rev. 2002). Responding, representatives for *The Clarion-Ledger* noted that one cannot subscribe to the "Focus." After a two-to-two vote, with three members abstaining, the council decided to consider the matter again during its January 2, 2002, meeting.

¶5.	The council again considered the issue of whether the "Focus" was a free insert on January 2. At this meeting, the advertising director for *The Clarion-Ledger* director, Tom Privett, spoke and submitted an affidavit attesting that the only way to get the "Focus" was to buy *The Clarion-Ledger* and that every copy of *The Clarion-Ledger* sold in Jackson contains a "Focus" section. He equated the "Focus" section to other sections such as the Sports or Business. He submitted a copy of the "Focus" and noted that it carries *The Clarion-Ledger*'s masthead on its front page. Based on this, the city council awarded the contract to *The Clarion-Ledger/Focus*.

¶6. On January 14, 2002, *The Jackson Advocate* filed a bill of exceptions and a motion for a temporary restraining order enjoining the city from publishing legal advertisements in any newspaper other than *The Jackson Advocate* until after its appeal. The motion was granted, and the circuit court reviewed the matter pursuant to Miss. Code Ann. § 11-51-75 (Rev. 2002).

¶7. At the February 6, 2002, hearing, the circuit court reviewed the council's decision and, despite objections that such review be limited to the record, the court heard additional testimony. Ultimately, the circuit court held that the "Focus" was not a section of *The Clarion-Ledger*. Specifically, the order cited the following reasons:

1. the "Focus" is not identified by a letter (e.g. B- "Metro and State"; C- "Business);
2. the "Focus" is contained in all Thursday newspapers (true sections are contained in each and every newspaper delivered or sold); and
3. the lack of consistency (there are three different versions of the "Focus"- NE, NW and S).

Accordingly, the court required that the "Focus" independently satisfy the requirements of Miss. Code Ann. § 13-3-31. Finding the "Focus" an unqualified bidder, the court held that *The Jackson Advocate* was the lowest qualified bidder.

### STANDARD OF REVIEW

¶8. Circuit court review here is restricted. The "[d]ecisions or orders of municipality are to be upheld unless the order was unsupported by substantial evidence; [ ]arbitrary or capricious; [ ]beyond the municipality's scope or powers; or violated the constitutional or statutory rights of the aggrieved party." *Falco Lime, Inc. v. Mayor & Aldermen of City of Vicksburg*, 836 So.2d 711, 721 (Miss. 2002); *Fondren North Renaissance v. Mayor & City Council of City of Jackson*, 749 So.2d 974, 979-80 (Miss. 1999) ("A decision by a local governing board is presumed valid, and the burden is upon the person seeking to set it aside...."). Likewise, so long as the governing body's decision is "fairly debatable,"

3

we are without authority to supplant the municipality's legislative action. ***McWaters v. City of Biloxi***, 591 So.2d 824, 827 (Miss. 1991); ***Mathis v. City of Greenville***, 724 So.2d 1109, 1112 (Miss. Ct. App. 1998). *See also* ***Barnes v. Bd. of Supervisors DeSoto County***, 553 So.2d 508, 510-11 (Miss. 1989) (noting the distinctive treatment accorded to legislative acts as opposed to adjudicative acts).

## ANALYSIS

¶9. "[This] Court does not pass upon the wisdom of the action of members of the mayor and city council in performing their discretionary, legislative acts." ***Fowler v. City of Hattiesburg***, 196 So.2d 358, 362 (Miss. 1967). We reverse the decision of the circuit court for the following two reasons: First, in reviewing the city council's decision, the circuit court abused its discretion. Second, the circuit court incorrectly concluded that the "Focus" was not a section of *The Clarion-Ledger* and thus incorrectly required that it independently satisfy the publication requirements as set forth in Miss. Code Ann. § 13-3-31.

¶10. According to Miss. Code Ann. § 11-51-75, any person aggrieved by the decision of municipal authorities may appeal to the circuit court. As noted, judicial review is limited. In the instant case, the issue was fairly debatable and, in fact, was debated during two meetings. Representatives from both *The Clarion-Ledger* and *The Jackson Advocate* were present at the meetings. Significant is the affidavit submitted by Thomas Privett, which addresses the issue of whether the "Focus" is a section of *The Clarion-Ledger*.

¶11. Privett presented several justifications for concluding that the "Focus" is a section, including: (1) it is not available free; (2) it is no different than other sections of the paper such as the "Sports" or "Classifieds"; (3) it may only be acquired through the purchase of *The Clarion-Ledger*; and (4) each Thursday paper sold in Jackson contains a "Focus" section, either NE, NW or South, all of which will

4

publish notices. Further, he noted that the NE, NW or South versions of the "Focus" were three of five zoned sections published on Thursday and that the other two, *The Madison County Herald* and *The Clinton News*, may be independently purchased. Unlike the "Focus", *The Madison County Herald* and *The Clinton News* papers have separate rate cards and ad contracts.

¶12. The record reflects that council members had several questions concerning this issue. Satisfied by the responses, and after being advised by its legal department, the council found *The Clarion-Ledger* to be the lowest qualified bidder. Accordingly, we find no basis for the circuit court to reverse the city council.

¶13. In addition to its abuse of discretion, the circuit court misapplied the law. The decision of the circuit court hinged on its determination that the "Focus" was not part of *The Clarion-Ledger*. Distinguishing the "Focus" from the *Clarion-Ledger*, the circuit court required that the "Focus" independently satisfy § 13-3-31, which it cannot do.

¶14. Section 13-3-31 states in relevant part:

(1) Whenever it is required by law that any summons, order, citation, advertisement or other legal notice shall be published in a newspaper in this state, it shall mean, in addition to any other requirements imposed by law, publication in some newspaper which:

(a) Maintains a general circulation predominantly to bona fide paying subscribers within the political subdivision within which publication of such legal notice is required. The term "general circulation" means numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers. In no event shall the term "general circulation" be interpreted to require that legal notices be published in a newspaper having the greatest circulation. The term "bona fide paying subscribers" means persons who have subscribed at a subscription rate which is not nominal, whether by mail subscriptions, purchases through dealers and carriers, street vendors and counter sellers, or any combination thereof, but shall not include free circulation, sales at a token or nominal subscription price and sales in bulk for purposes other than for resale for individual subscribers.

(b) Maintains a legitimate list of its bona fide paying subscribers by the following categories where applicable:

      (i)     Mail subscribers;

      (ii)    Dealers and carriers; and

      (iii)   Street vendors and counter sellers.

(c) Is not published primarily for advertising purposes and has not contained more than seventy-five percent (75%) advertising in more than one-half ( ½ ) of its issues during the period of twelve (12) months next prior to the first publication of any legal notice therein, excluding separate advertising supplements inserted into but separately identifiable from any regular issue or issues.

(d) Has been established and published continuously for at least twelve (12) months next prior to the first publication of such matter to be published, is regularly issued at stated intervals no less frequently than once a week, bears a date of issue, and is numbered consecutively; provided, however, that publication on legal holidays of this state or of the United States and on Saturdays and Sundays shall not be required, and failure to publish not more than two (2) regular issues in any calendar year shall not disqualify a paper otherwise qualified.

(e) Is issued from a known office of publication, which shall be the principal public business office of the newspaper and need not be the place at which the newspaper's printing presses are physically located. A newspaper shall be deemed to be "published" at the place where its known office of publication is located.

(f) Is formed of printed sheets. [...]

(g) Is originated and published for the dissemination of current news and intelligence of varied, broad and general public interest, announcements and notices, opinions as editorials on a regular or irregular basis, and advertising and miscellaneous reading matter.

(h) Is not designed primarily for free circulation or for circulation at nominal rates.

(2) "Newspaper," as used in this section, shall not include a newspaper, publication, or periodical which is published, sponsored by, is directly supported financially by, or is published to further the interests of, or is directed to, or has a circulation restricted in whole or in part to any particular sect, denomination, labor or fraternal organization or other special group or class of citizens, or which primarily contains information of a specialized nature rather than information of varied, broad and general interest to the general public, or which is directed to any particular geographical portion of any given political subdivision within which publication of such legal notice is required, rather than to such political subdivision as a whole. No newspaper otherwise qualified under this section shall be

disqualified from publishing legal notices for the sole reason that such newspaper does not have as great a circulation as some other newspaper publishing in the same political subdivision.

Miss. Code Ann. § 13-3-31 (Rev. 2002).

¶15. Section 13-3-31 simply defines a newspaper and provides the criteria a newspaper must satisfy in order to publish legal notices. It does not speak to the law for determining when a section of a newspaper is treated as a separate and independent newspaper. Consequently, § 13-3-31 is not the law in determining whether the "Focus" is part the Clarion-Ledger. With no Mississippi law on point, we are assisted by the decision of the Alabama Supreme Court in *Gulf Coast Media, Inc. v. Mobile Press Register, Inc.*, 470 So.2d 1211 (Ala. 1985).

¶16. In *Gulf Coast Media*, the court considered whether *The Baldwin People* was qualified to publish legal notices. *Id.* at 1213. Published weekly, *The Baldwin People* circulated as an insert in the Thursday editions of *The Mobile Register* and *The Mobile Press. Id.* at 1212. Consumers could not subscribe to or purchase *The Baldwin People* by itself, and it was not circulated independently. *Id.* at 1214. The court held that *The Baldwin People* lost its status as a newspaper when it was inserted into and distributed with a parent newspaper. Therefore, it did not qualify as a "newspaper" for the purposes of the legal notice statute. *Id.* at 1214. Further, the court noted that since it was inserted into, and distributed along with, another publication *The Baldwin People* was an "integral part" of a newspaper rather than a newspaper in and of itself. *Id.* Applying the holding from *Gulf Coast Media, Inc.*, we find that the "Focus" is an integral part of *The Clarion-Ledger*.

¶17. There is no evidence that the "Focus" is anything other than a typical section of *The Clarion-Ledger*. It is not sold or distributed independently. The fact that it is not identified by a letter is

7

subordinate to the fact that the section bears *The Clarion-Ledger*'s masthead. Further, irrelevant is the fact that the "Focus" is only contained in copies sold in Jackson. Section 13-3-31 does not require that the notice be contained in all copies, even if outside the relevant political subdivision.

¶18.    For the above reasons, we find that the circuit court erred in ruling that the "Focus" was not a section of *The Clarion-Ledger*.

## CONCLUSION

¶19.    Though § 13-3-31 is relevant, it is not controlling in the instant matter. We hold that the circuit court abused its discretion and erred as a matter of law in determining that "Focus" was not a section of *The Clarion-Ledger*. We reverse the circuit court's judgment, and we render judgment here reinstating the decision by the Jackson City Council that *The Clarion-Ledger/Focus* was the lowest qualified bidder.

¶20.    **REVERSED AND RENDERED.**

**SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶21.    Because I find that the circuit court's decision was correct, I respectfully dissent.

¶22.    The *Clarion Ledger* argues that the City Council's decision that the *Focus* is a section of The *Clarion Ledger* was supported by substantial evidence and that the standard of review requires the affirmance of the City Council's decision. The City Council also argues that the standard of review requires affirmance of the City Council's decision if it was fairly debatable and supported by substantial evidence. The City Council further contends that it applied the relevant law to the facts, it reviewed all of the

information submitted by the bidders and that it in no way acted arbitrarily or capriciously in making its decision.

¶23. "The scope of a reviewing court is limited in examining the actions of a municipal board. The order of the governing body of a municipality may not be set aside if its validity is fairly debatable. Such an order may not be set aside by a reviewing court unless it is clearly shown to be arbitrary, capricious, or discriminatory or is illegal or without substantial evidentiary basis." ***Sunland Pub. Co. v. City of Jackson,*** 710 So.2d 879, 881-82 (Miss. 1998); ***City of Jackson v. Capital Reporter Publ'g Co.,*** 373 So.2d 802, 807 (Miss. 1979).

Here, the circuit court reversed the order of the City Council awarding the legal publication contract to the *Clarion Ledger/Focus* on the basis that the City Council failed to make specific findings of fact as to whether the *Focus* qualified as a newspaper under Miss. Code Ann. § 13-3-31 (Rev. 2002).

¶24. The interpretation of a statute is a question of law and reviewed de novo. ***32 Pit Bulldogs & Other Property v. County of Prentiss,*** 808 So.2d 971, 973 (Miss. 2002). The applicable principles of statutory interpretation and construction are well established. "If a statute is not ambiguous, the court should apply the plain meaning of the statute." However, in the event of ambiguity, "this Court's goal is to discern the legislative intent." ***Sykes v. State,*** 757 So.2d 997, 1000 (Miss. 2000). "[I]n determining the legislative intent, this Court may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished." ***32 Pit Bulldogs & Other Property,*** 808 So.2d at 973-74.

¶25. Miss. Code Ann. § 13-3-31 sets forth the publication requirements that a newspaper must meet to qualify as a valid publisher of legal notices.

(1) Whenever it is required by law that any summons, order, citation, advertisement or

9

other legal notice shall be published in a newspaper in this state, it shall mean, in addition to any other requirements imposed by law, publication in some newspaper which:

*(a) Maintains a general circulation predominantly to bona fide paying subscribers within the political subdivision within which publication of such legal notice is required.* The term "general circulation" means numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers. In no event shall the term "general circulation" be interpreted to require that legal notices be published in a newspaper having the greatest circulation. The term "bona fide paying subscribers" means persons who have subscribed at a subscription rate which is not nominal, whether by mail subscriptions, purchases through dealers and carriers, street vendors and counter sellers, or any combination thereof, but shall not include free circulation, sales at a token or nominal subscription price and sales in bulk for purposes other than for resale for individual subscribers.

*(b) Maintains a legitimate list of its bona fide paying subscribers by the following categories where applicable:*

(i) Mail subscribers;

(ii) Dealers and carriers; and

(iii) Street vendors and counter sellers.

(c) Is not published primarily for advertising purposes and has not contained more than seventy-five percent (75%) advertising in more than one-half (½) of its issues during the period of twelve (12) months next prior to the first publication of any legal notice therein, excluding separate advertising supplements inserted into but separately identifiable from any regular issue or issues.

(d) Has been established and published continuously for at least twelve (12) months next prior to the first publication of such matter to be published, is regularly issued at stated intervals no less frequently than once a week, bears a date of issue, *and is numbered consecutively*; provided, however, that publication on legal holidays of this state or of the United States and on Saturdays and Sundays shall not be required, and failure to publish not more than two (2) regular issues in any calendar year shall not disqualify a paper otherwise qualified.

(e) Is issued from a known office of publication, which shall be the principal public business office of the newspaper and need not be the place at which the newspaper's printing presses are physically located. A newspaper shall be deemed to be "published" at the place where its known office of publication is located.

(f) Is formed of printed sheets. However, the word "printed" does not include reproduction by the stencil, mimeograph or hectograph process.

(g) Is originated and published for the dissemination of current news and intelligence of varied, broad and general public interest, announcements and notices, opinions as editorials on a regular or irregular basis, and advertising and miscellaneous reading matter.

(h) Is not designed primarily for free circulation or for circulation at nominal rates.

Miss. Code Ann. § 13-3-31(1) (Rev. 2002) (emphasis added).

¶26.    This Court has not had occasion to interpret this statute on the basis of whether an insert in a parent newspaper qualifies as a "newspaper" as defined by Miss. Code Ann. § 13-3-31. In this instance, an Alabama Supreme Court case is illustrative. In *Gulf Coast Media, Inc. v. Mobile Press Register, Inc.*, 470 So.2d 1211 (Ala. 1985), Gulf Coast Media brought an action against the *Mobile Press Register* to determine whether the publication known as the *Baldwin People* was qualified to publish legal advertising in Baldwin County. The *Baldwin People*, published weekly, was owned by the Mobile Press and was circulated in the Thursday edition of the *Mobile Register* (morning paper) and the *Mobile Press* (afternoon paper).

¶27.    Alabama's legal notice statute, Ala. Code § 6-8-60 (1975), stated in pertinent part:

> [A]ll publications required by any law, mortgage or other contract to be published in a newspaper must be published in any newspaper printed in the English language which has a general circulation in the county, regardless of where the paper is printed, if the principal editorial office of the newspaper is located within the county and which newspaper shall have been mailed under the second class mailing privilege of the United States postal service from the post office where it is published for at least 51 weeks a year.

¶28.    The Alabama Supreme Court found that an inserted publication such as the *Baldwin People* loses it status as a newspaper, for the purposes of legal publication, when it is inserted into and distributed with the parent newspaper. 470 So.2d at 1214. The court also concluded that the *Baldwin People* was an integral part of a newspaper, and not a newspaper itself, because a consumer could not subscribe to or purchase it, and because it had no circulation of its own, other than in conjunction with the Mobile papers. Moreover, the Alabama court discussed *Friedman's Express v. Mirror Transp. Co.,* 71 F. Supp. 991 (D.N.J. 1947), *aff'd,* 169 F.2d 504 (3d Cir. 1948), which found that the comic section of a newspaper is an integral part that makes up the sum total of a newspaper. *Gulf Coast Media, Inc.*, 470 So.2d at 1214 . *Friedman's Express* stated:

11

> All of this melange is contained in what are known as special sections of the paper. There is the advertising section, the home section, the magazine section, the financial section, the sports section and the news section, each with its appeal to various members of the family. The collection in its entirety is recognized as a Newspaper and is carried and distributed as such without distinction as to sections. Each section is thus an integral part of the newspaper, made so not because it is physically folded in a news section, but because it has assumed the character of the journal of which it is a part; and each bears at its masthead the name of the publication of which it is a part.

71 F. Supp. at 992. Another factor which contributed to the Alabama court's finding that the *Baldwin People* was a section of the parent newspaper was its identification by the section letter G. 470 So. 2d at 1214.

¶29.   In the instant case, the circuit court found that the *Focus* was not a section of the *Clarion Ledger* for three reasons: (1) the *Focus* is not identified by alphabet (i.e., B-State\State, C-Business, D-Sports, E-Southern Style, etc.); (2) the *Focus* is not contained in each newspaper delivered or sold on Thursdays; and (3) the *Focus* is not consistent (there are three different versions of *Focus* - Northeast (NE), Northwest (NW), South (S). After making the preliminary determination that the *Focus* is not a section of the *Clarion Ledger*, the circuit court found that the *Focus* must independently meet the requirements of Miss. Code Ann. § 13-3-31 to qualify as a newspaper.

¶30.   This Court's initial determination is whether the *Focus* is an integral part of the *Clarion Ledger*. I agree with the circuit court's determination that the *Focus* is not an integral part of the *Clarion Ledger*. The *Focus* is not a section because it is not identified by a section letter. Furthermore, the *Focus* is not a section because every subscriber or purchaser cannot obtain an identical and consistent copy of the *Focus* on Thursdays. Three different versions of the *Focus* are disseminated in the NE, NW, and S. The area of town where a consumer resides or purchases the *Clarion Ledger* determines which version of the *Focus* a consumer will receive.

¶31. Since the *Focus* is not an integral part of the *Clarion Ledger*, the *Focus* has to qualify as an independent newspaper under the statute in order to publish legal notices. The *Focus* is not qualified to publish legal notices because it is not a newspaper as defined by Miss. Code Ann. § 13-3-31.

¶32. The statute is not ambiguous; therefore, the plain meaning of the statute should be applied here. Standing alone, the *Focus* does not meet the criteria under subsections a, b, and d of Miss. Code Ann. § 13-3-31. The *Focus* has no independent general circulation. A consumer cannot subscribe to or purchase the *Focus* on its own. The *Focus* can only be obtained by subscribing to or purchasing the *Clarion Ledger*. For these reasons, the *Focus* does not meet the qualifications set forth in the statute and is therefore, not qualified as a newspaper to publish legal notices.

¶33. Since the circuit court did not err, I would affirm its judgment. For the reasons stated, I find that the *Focus* does not meet the qualifications of Miss. Code Ann. §13-3-31 and respectfully dissent.

**McRAE, P.J., AND EASLEY, J., JOIN THIS OPINION.**